STATE of Missouri ex rel. McDONNELL DOUGLAS CORPORATION, Relator,

v.

The Honorable Gary M. GAERTNER, Judge of the Twenty-Second Judicial Circuit of the State of Missouri and, as Such, Judge of the Circuit Court of the City of St. Louis, Missouri, Respondent.

No. 39952.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 29, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 20, 1980.

Robert G. Brady, Robert F. Scoular, Michael G. Biggers, St. Louis, for relators.

Mogab & Hughes, Richard L. Hughes, James F. Hespen, St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

This is an original proceeding in prohibition, or in the alternative, mandamus, to require the trial court to enter summary judgment in favor of relator and to refrain from any further proceedings in the cause entitled, Russell C. Bunting, Plaintiff v. McDonnell Aircraft Company, now McDonnell Douglas Corporation (hereafter referred to as "McDonnell"), defendant, Cause No. 87192–E, which is pending in the Circuit Court of the City of St. Louis.

Plaintiff's petition, in three counts, was originally filed in 1967, and it has been the subject of several amendments. Numerous sets of interrogatories and answers have been filed by both parties. Requests for admissions of fact have been filed and answered, and numerous motions have been presented. The result is that the record before this court is extremely voluminous. For a previous appeal pertaining to this litigation, see *Bunting v. McDonnell Aircraft Corporation*, 522 S.W.2d 161 (Mo. banc 1975).

Prohibition is a means of restraint on judicial personnel or bodies to prevent usurpation of judicial power, and its essential function is to confine inferior courts to their proper jurisdiction and to prevent them from acting without or in excess of their jurisdiction. *State ex rel. Allen v. Yeaman*, 440 S.W.2d 138 (Mo.App.1969). It is preventive in nature rather than corrective. The writ issues to restrain the commission of a future act and not to undo one that has already been committed. *State ex rel. Ellis v. Creech*, 364 Mo. 92, 259 S.W.2d 372 (Mo.1953). It is generally allowed to avoid useless suits and thereby minimize inconvenience, and to grant relief when proper under the circumstances at the earliest possible moment in the course of litigation. But, it is not to be granted except when usurpation of jurisdiction or an act in excess of jurisdiction is clearly evident. *State ex rel. McCarter v. Craig*, 328 S.W.2d 589 (Mo. banc 1959).

Mandamus, on the other hand, is affirmative in nature. It is an order issued by a court of competent jurisdiction to compel the performance of an act which is required by law, but the performance of which has been refused. *State v. Missouri State Employees' Retirement System*, 362 S.W.2d 571 (Mo. banc 1962); *State ex rel. University Park Building Corporation v. Henry*, 376 S.W.2d 614 (Mo.App.1964). In view of the factual situation of this case and the relief sought, further distinction of these two remedies is not necessary. If relator is not entitled to relief by way of prohibition, it would not be entitled to relief by way of mandamus.

The substance of relator's contention is that *as a matter of law* it is entitled to a declaratory judgment in its favor, and for that reason when the trial court overruled its motion for such judgment respondent judge "exceeded his jurisdiction and grossly abused his judicial discretion."

From the pleadings, answers to interrogatories, and other documents in the record we have determined the following to be the pertinent and material facts.

Ross Bunting was employed by McDonnell in March 1955. As a condition of employment he signed an "employment contract" which provided that any invention

"relating directly or indirectly to the business or research of [McDonnell] * * * conceived or first actually reduced to practice, solely or jointly by [him] during [his] employment and within six months thereafter, shall be disclosed to and become the property of [McDonnell] and [that he] shall assist in vesting good title in [McDonnell] and in obtaining patents, renewals, reissues and extensions thereon." As a part of that employment contract, Bunting was to receive the benefit of a "patent compensation plan" which provided as one of the benefits, compensation to the employee-inventor from the "sale or licensing of patents" by McDonnell. The plan also provided that initially all "gross revenue" derived from the "sale or licensing of assigned patents be applied to reimburse [McDonnell] for all its direct and indirect costs in connection with the invention," and thereafter the employee-inventor "will be granted a percentage of the remaining net income" as therein set forth. The plan also provided that if McDonnell "does not sell or license the patent, so that there is no ascertainable net income: An award up to $1,000 * * * may be granted on approval by the President of [McDonnell]" and "A larger award may be granted on approval of the Board of Directors."

In April 1960, while employed by McDonnell, Bunting conceived and invented "an optical viewing system with polarized beam-splitting element," which when incorporated into a fighter plane's radar camera "splits" the photographed image permitting it to be recorded on film and to be seen by the plane's radar operator at the same time. We sometimes hereafter refer to this invention as "OVS." Application for a patent on the invention was filed with the United States Patent Office on August 14, 1961, and a patent was issued on May 24, 1966, to Russell C. Bunting, assignor to McDonnell Aircraft Corporation.

In his petition, Bunting alleged in Count I that by the terms of the patent compensa-

tion plan he "was to receive ten percent (10%) of all net income received by [McDonnell] in excess of Two Thousand Dollars ($2,000.00) from the use, sale or licensing of said patent,"[1] and that although he has performed all of the conditions, McDonnell has breached the contract providing for payment to him "by manufacturing, using, practicing and selling, and by allowing * * Conductron Corporation of Missouri, among others, to manufacture, use, practice and sell [his] invention, or the fruits of said invention, i. e., 'the optional viewing system with polarized beam splitting element' as incorporated into high range data recording cameras and direct radar scope cameras in which the said invention is the sole patented and integral and valuable part, without McDonnell's charging and receiving from Conductron or others a reasonable licensing fee and without paying plaintiff ten percent (10%) of such reasonable licensing fee."

In Count II plaintiff alleged that at the time he assigned his invention to McDonnell a contract existed between McDonnell and the United States Government, wherein McDonnell agreed, among other things, to allow the United States Government to use and practice without the payment of a license fee all inventions and patents developed as the result of work performed under McDonnell's contracts with the United States Government, and that McDonnell now asserts that contract as a bar to his right to receive income pursuant to his contract with McDonnell. He further alleged that if said contract with the United States should bar his right to receive income under his contract, that although McDonnell knew of the existence of its contract with the United States and its effect on earnings which plaintiff could anticipate, McDonnell did not disclose its existence to plaintiff and that its failure to do so was "fraudulent and done with an intent to deceive plaintiff."

By his Count III, Bunting alleged unjust enrichment on the part of McDonnell at his expense by the use of the patent without

---

1. A copy of the patent compensation plan attached to the petition recites that the employee-inventor is to receive 10% in excess of

$2,000 of "net income" from "sale or licensing" of patents. No mention is made of net income from the "use" of the patent.

receiving a reasonable license fee and paying a proper percentage to plaintiff.

▪ Pursuant to Rule 74.04(c)(h), summary judgment could have been granted by respondent only when there was no genuine issue as to any material fact, and the burden was on McDonnell to so demonstrate. But, it has repeatedly been held that an issue of fact, for the purpose of avoiding summary judgment exists whenever there is the slightest doubt as to the material facts. *Dunbar v. Allstate Insurance Company*, 584 S.W.2d 123 (Mo.App.1979). A fact is material if it is of such "legal probative force as would control or determine the result of the litigation." *Ware v. St. Louis Car Company*, 384 S.W.2d 287, 290 (Mo.App. 1964). Therefore, unless it can now be said "as a matter of law" that respondent could not have entered any order other than a judgment in favor of McDonnell, our preliminary writ of prohibition was improvidently granted.

▪ In 1966 McDonnell sold or transferred to Conductron Corporation its Electronic Equipment Division for 1,850,000 shares of Conductron stock. In a "proxy statement" published by Conductron Corporation for use at a special meeting of the shareholders it was stated that the "principal products and services of EED" [McDonnell's Electronic Equipment Division] included "Airborne camera for the Phantom II aircraft," and in reference to "Phantom II Flight Equipment" it was stated: "The Division also has combined optional and electronic technology in the direct radar scope camera system which it builds for installation in Phantom II and other military aircraft. This system is installed in the aircraft cockpit and records airborne radar information on standard film suitable for projection with motion picture facilities." Bunting asserts that his invention "is the principal component of [those] cameras." McDonnell contends that the above proxy statement provided that Schedule A–1 of the "Definitive Agreement" (which it defines as the "sales agreement" between it and Conductron), specified that the "only" patents sold to Conductron were contained therein, and Bunting's patent "was not an asset of the Electronic Equipment Division" and was not sold by McDonnell to Conductron, and therefore the "actual contract document confirmed McDonnell's affidavit" made by C. Richard Landholt, in which he stated that "The OVS patent * * * was never assigned by McDonnell Douglas to its Electronic Equipment Division ['EED'], and McDonnell Douglas did not sell the OVS patent to the former Conductron Corporation as part of the sale of assets of its Electronic Equipment Division to Conductron or otherwise." However, at most by these contentions there is created an issue of fact. McDonnell asserts that Bunting's patent was not sold to Conductron; Bunting asserts that the prospectus of Conductron listed items, of which Conductron was purchasing the right to manufacture, which contained his invention as "the principal component." There is no question but that Conductron did manufacture and sell the patented device, but whether it did so as the owner of the patent after it purchased the patent is an issue of fact to be determined from the evidence and was not subject to determination from the record before respondent on motion for summary judgment.

As noted, McDonnell admits that Conductron manufactured the OVS. In order for it to do so, it had to have purchased the patent rights, or it had to have been licensed to do so by the owner, McDonnell. If Conductron did not purchase the patent rights when it obtained the assets of EED, as McDonnell asserts, did it acquire by that transaction in which it conveyed 1,850,000 shares of its stock to McDonnell, the right to manufacture the patented item? If so, it had to have been by way of license. If not, by what arrangement and at what consideration, if any, was that right obtained? These were issues of fact which were not subject to determination as a matter of law on the record before respondent, and therefore were not subject to be foreclosed by summary judgment.

McDonnell argues other issues pertaining to Count I. For example, it briefs the

question of whether there was an "implied agreement" for a royalty payment to Bunting. It also briefs the effect of an agreement between it and the United States Government providing for a royalty-free license of any invention "conceived * * in the performance of the experimental, development, or research work called for" under any government research or development contract. If this was material to the issue of whether respondent was authorized to enter summary judgment, we note that Bunting denies that he was working on a government contract when he invented the OVS, and he asserts that his time was being charged to an "in house" charge number. Bunting also denies McDonnell's assertion that it sold the patented item only to the United States Government subject to royalty-free regulations. He asserts that a license fee could be charged by McDonnell when the sale of his patented item was made under the Foreign Military Sales (FMS) program, and he points out a difference in prices charged by McDonnell which he argues represents, or could represent, a hidden license fee. We expressly do not rule these contentions, and our ruling here is to have no affect on the right of either party to present evidence in support of the contentions now made.

McDonnell also asserts that prohibition should lie as to Count II and Count III because Bunting "does not and cannot state a claim for relief" as to either count. Count II and Count III are each expressly stated to be an "alternative cause of action" to Count I. In view of this "alternative" status, and the liberal right to amend pleadings, Rule 55.33, any ruling in this application for a writ of prohibition as to the contentions of McDonnell pertaining to Counts II and III would not be appropriate.

The preliminary writ should be and hereby is quashed.

DOWD, P. J., and CRIST, J., concur.