Charles W. LEONARD, Respondent,

v.

AMERICAN WALNUT COMPANY, INC., Appellant.

No. WD 31027.

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

Dale Reesman, Boonville, for appellant.

James E. Conway, Boonville, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

Charles W. Leonard brought suit for damages incurred when American Walnut Company breached its contract to purchase standing walnut timber on Leonard's farm. After a bench trial, judgment was entered for Leonard in the sum of $3347.00 and American Walnut Company appeals.

The principal point of error asserted on this appeal under four alternative but interrelated contentions concerns the theory and measure of damages for breach of the purchase contract. Additionally, American argues that its failure to perform was justified in response to the seller's breach when the quantity and identity of the trees sold was changed after the contract was made. Because the facts bear importantly on these issues, the evidence must be recounted in some detail.

Leonard owns more than 1,900 acres of land in Cooper County including acreage in timber. In the fall of 1975, he selected and offered for sale 143 walnut trees which

were to be "culled" because they were dying or were crowding other trees. The terms of the offering were that removal of the trees was to be by the buyer. Paper tags attached by Leonard to the trees identified those to be sold. An invitation was extended to bidders with bids to be opened and the sale consummated at the Bunceton State Bank December 30, 1975.

A representative of American inspected the trees in company with Leonard's son and submitted a bid. At the bid opening December 30, American was the high bidder at $8471.00, but the bid failed to conform to the offering because the bid specified a purchase of 163 trees rather than the 143 offered. The apparent successful bidder was Ace Log and Lumber at $5124.80 for the correct quantity of trees.

American's representatives, Horton and Sartin, were present at the bid opening. Their attention was called to the quantitative variance in the number of trees. Horton thereupon announced that American would let its bid stand and accept the lesser number of trees without revision in the bid price. A contract was signed and American's draft for $8471.00 was delivered to Leonard.

The same day, Horton and Sartin returned to the Leonard farm for the purpose of spraying paint markings on the trees purchased. Marking was not completed that afternoon. Horton and Sartin returned the following morning but, according to Sartin's testimony, they discovered that tags were missing from some trees which had been included in the purchase and other tags had been moved to trees of lesser quality. On this account, they proceeded at once to the office of American where payment on the draft to Leonard was stopped.

No complaint was made to Leonard as to the alleged substitution of different trees and it was only when Leonard was notified by his bank of the dishonored draft that he learned the sale had aborted. Discussion thereafter led to no solution and Leonard commenced this action March 2, 1976. As damages, Leonard sought to recover from American the difference between the price agreed to be paid by American and the then fair market value of the trees as evidenced by the next lower bid at the sale, that of Ace Log and Lumber.

Early in 1977, before trial of this case but more than one year after American's bid for the trees was made, Leonard again offered walnut trees for sale. This subsequent offering was of 293 trees, many of superior quality to those which American had contracted to purchase. Some, but not all, of the trees in the earlier sale were included with other trees in the second offering. The price realized by Leonard from this sale amounted to $26,015.00. Absence of definite identification of trees in the first and second offerings and the lump sum nature of the sale prices preclude ascertaining comparative prices for trees included in both sale transactions.

Considering, first, American's contention that changes in markings of the trees by Leonard or his agents justified rescission of the contract by American, the evidence on the subject was sharply conflicting. The trial court, sitting as a fact finder, was required to decide if American had been misled as to the number of trees, if the identification tags had been changed, or if rescission of the contract was simply the result of a later decision that the bid had exceeded the value of the goods. By its findings and judgment, the court chose to believe Leonard's witnesses and rejected American's version of events.

Credibility of witnesses is to be determined by the fact finder and on conflicting testimony, the result reached in the trial court is entitled to deference. *Lytle v. Page*, 591 S.W.2d 421 (Mo.App.1979). Here, the trial court's finding that American had bid to purchase 143 trees and had failed to make payment without any justified complaint as to the quantity or identity of the trees was supported by substantial evidence. In a court–tried case, the appellate court may not disturb the decision on fact questions if the result is supported by substantial evidence and is not against the weight of the evidence. *Murphy v. Carron*,

536 S.W.2d 30 (Mo. banc 1976). The point contending here for a different result on the facts affords no basis for reversal.

American next argues that even if it is liable to Leonard for breach of the purchase contract, Leonard resold the trees and he may not thereafter pursue a claim against American on the contract because a double recovery would be accomplished. Intertwined in this point are American's additional arguments: (1) Leonard was obligated to conduct the resale in a commercially acceptable manner to mitigate American's damage, and (2) any proceeds Leonard received from resale of the trees should be credited against the obligation of American under the original purchase contract. American argues that none of the above appears from the evidence and that the damage award was fatally miscalculated.

■ Some confusion is engendered by American's argument that Leonard was obligated to elect his remedies and, having proceeded to a resale, he has foreclosed other alternatives. The remedies of a seller upon breach of an agreement to purchase goods are set out in the Uniform Commercial Code, Sections 400.2–703, et seq., RSMo 1978, where options are provided, the choice among which will preclude recourse to others. Under Section 400.2–107, RSMo 1978, however, standing timber sold on an agreement for severance by the buyer does not constitute a sale of goods but is a contract affecting land. The Uniform Commercial Code is therefore not applicable in defining the seller's remedies in this case.

■ The code provision as to standing timber is not a departure from but restates prior law on the subject holding that an agreement to sell trees growing in place is a contract for the sale of an interest in land. *Gibson v. St. Joseph Lead Co.*, 232 Mo.App. 234, 102 S.W.2d 152 (1937); *Starks v. Garver Lumber Mfg. Co.*, 182 Mo.App. 241, 167 S.W. 1198 (1914). Generally, the measure of damages for breach of a contract to purchase realty is the difference between the contract price and the fair market value of the property on the date the sale should have been completed. *Construction Enter-*

*prises, Inc. v. Schaeffer*, 562 S.W.2d 799 (Mo.App.1978); *Duncan v. Townsend*, 325 S.W.2d 67 (Mo.App.1959).

■ In sales of an interest in realty, there is no obligation on the part of the seller to elect his remedy when the buyer defaults and there is no applicable theory of mitigation of damages. The seller may resell the property or retain it and, in either event, be entitled to recover his loss measured by the difference between the contract price and the market price. Of course, an essential element of the seller's case is proof of market value and if he does resell within a reasonable time after the breach, the price obtained is some evidence of market value. *Louis Steinbaum Real Estate Co. v. Maltz*, 247 S.W.2d 652 (Mo.1952).

■ American's argument here goes astray on two counts–first, that Leonard was under a duty to resell the trees to protect American from additional loss and, second, that American was entitled to credit against the damage claim in the amount Leonard received on resale of the trees a year after American's purchase default. The damage from the contract breach is neither reduced nor increased by subsequent events because the amount is set by values on the sale date. No obligation therefore controls the action of the seller as to a resale and that detail is immaterial unless either party chooses to rely on the resale as evidence of market value at the time of the first aborted sale.

In effect, a defaulting buyer of an interest in land does receive a credit for the proceeds of a resale to the extent that such proceeds represent the market value by which the damages are measured. Obviously, where market value equals or exceeds the contract price in the agreement breached, the seller has suffered no loss and is entitled to no recovery from the buyer. Thus, the issue here, as in most similar cases, is a determination of market value.

American argues that Leonard did not offer sufficient evidence to sustain his burden of proving market value and, inferentially, contends that the resale for a price

significantly greater than the price in the original contract with American demonstrates that Leonard actually suffered no loss.

■ As to the latter contention, the date and circumstances of the second timber sale prevent that transaction from meriting any consideration as evidence of market value as of the date when American breached its purchase agreement. It was conceded by all witnesses that some trees in the first sale were not included in the second offering, that at least 150 trees were added to the second sale and that many were of superior quality, eliminating any possible computation of value on a unit basis. Additionally, no evidence of a stable value for walnut logs during the year which separated the two sales permitted a determination that market values for the same items would have been comparable on the two dates. In short, the second sale was too remote in point of time, was not a sale of the same product and does not bear at all on ascertainment of Leonard's damage.

■ The evidence relied on by Leonard to establish market value on the date of the sale to American was the highest price bid among American's competitors at the sale offering. The walnut timber buyer who had prepared and submitted that bid on behalf of Ace Log and Lumber Co. appeared as a witness and testified that he had been engaged in the business of buying walnut for forty-three years and in his opinion the bid he had made was, at that time, good market value for Leonard's trees as offered. Not only was this appraisal of the market value entitled to credence by reason of the witness's expert qualifications, but it was a price which a willing buyer was prepared to pay on the sale date. No evidence impugned the character of the sale offering which was in the open market and upon a basis anticipated to return the highest price to Leonard. Fair market value was adequately established and without any countervailing evidence, Leonard

proved the damage for which he was entitled to a verdict.

The judgment is affirmed.

All concur.