Defendants, John and Mary Ann Schottland, appeal from a final judgment which ordered them to specifically perform a contract for the purchase of a house from *Page 73 
plaintiffs, Wilbur J. Lucas, Jr., and Janis E. Lucas. Plaintiffs, sellers, sought specific performance of the contract alleging they were ready, willing and able to perform in accordance with the contract but the defendants refused to close the sale.
The Schottlands denied that the contract was enforceable, on the basis that contract provisions that the property be conveyed free of encumbrances and that the contract was subject to the Schottland's securing a conventional loan of up to 90% of the sales price of the property had not been fulfilled. The trial court, after hearing the evidence ore tenus, concluded that the Schottlands never formally sought a conventional loan of 90% of the purchase price. The trial court also found the Schottlands to be estopped from asserting as a defense the existence of recorded subdivision restrictions, utility easements, a sewer agreement and building line restrictions, because they had waived the provision in the sales contract that the property be conveyed "free of all encumbrances" as it applied to those items.
In this appeal the Schottlands raise three issues: (1) Whether they waived and frustrated the condition in the sales contract pertaining to financing; (2) whether they are estopped from raising or have waived their objections to the alleged title defects; and (3) whether the trial court erred in ordering specific performance of the contract.
In the summer of 1979 the Lucases offered their home at 3733 River Oaks Circle, Mountain Brook, Alabama, for sale through a real estate broker. In late July 1979 Dr. Schottland, who had accepted employment in Jefferson County and was in the process of moving his family and residence from Longview, Washington, to Mountain Brook, Alabama, inspected the home and offered to purchase it. Dr. and Mrs. Schottland executed a real estate sales contract wherein they agreed to purchase the house from the Lucases for $112,500; $4,000 earnest money and $108,500 cash on closing.
The sales contract described the property as "Lot 7, River Oaks, 1st Sector, Map Book 81, Page 18; otherwise known as 3733 River Oaks Circle." It provided that the property was to be "conveyed subject to any mineral and mining rights not owned by the undersigned seller and subject to the present zoning classification residential. . . ." No mention was made in the contract of restrictions, easements or encumbrances affecting fee simple title to the property; instead the sellers agreed "to convey said property by general warranty deed free of all encumbrances," except those set out in the contract and the sellers and purchasers agreed "that any encumbrances not herein excepted or assumed may be cleared at time of closing from sales proceeds."
The contract was "subject to purchasers securing a conventional loan up to 90% of the sales price." Purchasers were to take possession and pay $800 per month rent from the date of possession until the date of closing. The sale of the Lucases' house was to be closed within seven days of the closing of the Schottlands' house and lot in Longview, Washington, but in no event later than 27 November 1979.
Prior to entering into the contract with the Lucases, Dr. Schottland, on 17 July 1979, made a preliminary application for a $90,000 residential mortgage loan from the Jackson Company. The loan application contained a financial statement which listed the value of the Schottlands' Washington property at $132,900 subject to a mortgage securing a debt in the principal amount of approximately $80,000. On 24 September 1979 a Jackson Company loan officer provided the Schottlands with an estimate of loan charges and expenses for a $90,000 mortgage loan and indicated that the company was willing to extend a loan in that amount on the Lucas house. Rather than borrow this amount from the Jackson Company under the terms and conditions required by it, Dr. Schottland decided to seek an 80% loan because the interest rates were cheaper. The trial court found this to be the case as a matter of fact.
The Schottlands took possession of the Lucas house on 28 August 1979, pursuant to a lease agreement contained in the contract for sale. On 21 September, the Schottlands *Page 74 
agreed to sell their house and lot in Washington for $102,000; approximately $30,000 less than the house was listed in his financial statement to the Jackson Company. On 17 October, Dr. Schottland refused to sign a Jackson Company formal loan application in substantially the same form as the 17 July preliminary application. The Schottlands then vacated the Lucas house on or about 22 October. The sale of the Schottlands' Washington home was closed on 24 October 1979 and they received net proceeds of $6,871.74 from the sale. On 25 October Dr. Schottland submitted a revised financial statement to the Jackson Company showing his net worth at $220.
On 6 November, Dr. Schottland telephoned the loan officer at the Jackson Company to inquire if the new financial information had been received and to ask why the company had not declined the loan. The loan officer stated to Dr. Schottland that it appeared to him (the loan officer) that he (Dr. Schottland) was trying to get out of the loan and that the Jackson Company would neither approve nor disapprove the loan at that time. The trial court found that Dr. Schottland did not seek a 90% mortgage loan from any other lender; the only lender he contacted was the Jackson Company.
Although the contract provision that made it subject to the Schottlands' securing a conventional loan up to 90% of the sales price is a valid condition precedent to performance by the Schottlands, there is an implied obligation that the purchasers attempt to obtain the requisite financing through the application of a reasonable, good faith effort. See Annot., 78 A.L.R.3d 880, 884 (1977) citing Betnar v. Rose,259 Ark. 820, 536 S.W.2d 719 (1976) and Fry v. George Elkins Co.,162 Cal.App.2d 256, 327 P.2d 905 (1958). Under the facts of this case a reasonable inference can be drawn that the Schottlands did not make a reasonable good faith effort to secure financing but rather frustrated this condition. By their failure to actively seek financing the Schottlands waived that condition and will not be allowed to rely upon the nonoccurrence of that condition as a defense. Canyon Land Park, Inc. v. Riley,575 F.2d 550 (5th Cir. 1978); Barnes v. Atlantic Pacific LifeIns. Co. of America, 325 So.2d 143, 295 Ala. 149 (1975).
With regard to the Schottlands' claims that the Lucases have both failed, and are unable, to transfer title free of encumbrances, we must consider the specific findings of the trial court. It found that the Schottlands' refusal, or failure, to perform was the result of their not obtaining the price they desired from the sale of the house at Longview, Washington. This finding is substantiated by a letter from Dr. Schottland to the Lucases dated 8 November 1979, which stated adverse changes in his financial situation as the reason for his refusal to purchase the Lucas house. The Schottlands later sought to defend on the basis that the house could not be transferred free of all encumbrances; this is contradictory to Dr. Schottland's earlier position.
When a purchaser refuses to accept a deed solely on the ground that he is not able to pay the purchase price he cannot afterward defend on the ground of a defect in title. 92 C.J.S.Vendor Purchaser § 506 (1955). In this case the bona fides of the asserted defense that the title tendered did not conform to the requirements of the contract is, at best, dubious.
The Schottlands complain that the Lucases' contract to sell the property failed to except any encumbrances, when in fact several encumbrances existed; therefore, the Lucases could not perform their obligation under the contract to convey the property free of all encumbrances. We need not address this issue because of what has been previously stated in this opinion which is dispositive of that contention.
Granting or denying relief by way of specific performance is a matter within the trial court's sound judicial discretion, controlled by fixed rules and principles, in view of special features and incidents of each case. Montgomery v. Peddy,355 So.2d 698 (Ala. 1978); Wray v. Harris, 350 So.2d 409 (Ala. 1977). Under the particular facts *Page 75 
of this case, and the governing principles of law, we cannot say that the trial court abused its discretion in ordering the contract specifically performed.
Therefore, the judgment below is due to be and is hereby affirmed.
AFFIRMED.
FAULKNER, ALMON, BEATTY and ADAMS, JJ., concur.