**Clarence HOELSCHER and Mildred Hoelscher, Respondents,**

v.

**Dale R. SCHENEWERK and Sharon K. Schenewerk, Appellants.**

**No. WD 43296.**

Missouri Court of Appeals, Western District.

March 5, 1991.

Robert L. Hyder, Jefferson City, for appellants.

Edward C. Clausen, Jefferson City, for respondents.

Before MANFORD, P.J., and BERREY and GAITAN, JJ.

GAITAN, Judge.

This appeal arises from a breach of contract action involving the sale of real estate. Respondents, Clarence and Mildred Hoelscher (plaintiffs or sellers), obtained a judgment against appellants, Dale and Sharon Schenewerk (defendants or buyers), for damages resulting from defendants' failure to fulfill a contractual obligation to purchase a home. Defendants appeal from this judgment alleging that the trial court erred in: (1) failing to find the contract invalid under the financing contingency clause; (2) awarding both the earnest money and damages to plaintiffs; and (3) assessing damages against defendants improperly. The judgment of the trial court is affirmed.

In the fall of 1988, defendants negotiated with plaintiffs for the sale of a residential dwelling in Jefferson City, Missouri. The final result of these negotiations was embodied in a written agreement reached on September 9, 1988. The parties to the contract agreed that the price to be paid by defendants was $85,500 and the sale was to be closed on October 19, 1988. The contract contained a financing contingency clause stating that:

> The Buyer shall use reasonable diligence in seeking to obtain such a loan or loans and in the event the Buyer is unable to obtain such loan commitment by 3:00 p.m. on the 5 day of Oct., 1988, then this contract shall be null and void and the earnest money deposited shall be returned to the buyer. The requirement of reasonable diligence on the part of the Buyer shall be deemed satisfied if the Buyer makes a loan application at three different lending institutions....

Defendants applied to only one lending institution for the purchase money, Mutual Savings and Loan Association of Jefferson City, Missouri. Mutual Savings issued the loan commitment approving the loan to defendants on October 4, 1988. Defendants testified, however, that they did not receive notification of the loan approval from Mutual Savings until October 7, 1988. Defendants did not close the sale as scheduled on October 19, 1988, and plaintiffs filed an action for specific performance and interest on the same day. The property was sold to a third party on July 18, 1989, for $80,400. Accordingly, the petition was amended to claim damages reflecting the difference between the actual sale price and the contract price. In the amended petition, plaintiffs sought $10,968.00 total damages: $5,868 in accrued interest from a debt on the property between October 19, 1988, and July 18, 1989, and $5,100 for the difference between the contract price and the actual sale price. The trial court awarded plaintiffs $10,-968.00. It is from this award of damages that the defendants appeal.

Our review will be dictated by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Thus, the decision of the trial court must be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. Under these guidelines, we affirm the judgment of the trial court.

### I.

Defendants allege that the trial court erred in not finding that the contract was made null and void by the financing contingency clause. Specifically, defendants claim that because they did not receive notice from Mutual Savings that their loan had been approved until October 7, 1988, the contract was null and void as of October 5, 1988. Accordingly, defendants argue that they cannot be held liable under a contract that had been nullified by its own terms. Conversely, plaintiffs argue that the contract only required that the financing be "obtained," not received by the buyers, by October 5, 1988, and that this condition was satisfied when the bank issued the loan commitment on October 4, 1988. The trial court's judgment is supported under either interpretation of "obtain" and thus we are compelled by *Murphy v. Carron* to affirm.

Missouri law imposes the duty of reasonable diligence and good faith on a buyer who enters into a contract containing a financing contingency clause. *Goldberg v. Charlie's Chevrolet, Inc.,* 672 S.W.2d 177, 178 (Mo.App.1984); *Alice Blake, Inc. v. Hoffman,* 620 S.W.2d 20, 22 (Mo.App. 1981). Further, "[i]f the buyer fails to make a good faith effort (to obtain the loan) he cannot rely on the contingency to avoid liability on the contract on the theory that the contract was conditional and nonbinding." *Nationwide Resources Corp. v. Massabni,* 134 Ariz. 557, 658 P.2d 210, 217 (Ct.App.1982) (parenthetical added); *see also Schottland v. Lucas,* 396 So.2d 72, 74 (Ala.1981) ("[B]y their failure to actively seek financing the Schottlands waived that condition and will not be allowed to rely upon the nonoccurrence of that condition as a defense.").

■ Regardless of what definition of "obtain" is used, for the defendants to reap the benefits of the financing contingency clause they must carry the burden of proving reasonable diligence and good faith in attempting to procure financing. *Goldberg*, 672 S.W.2d at 178. Defendants failed to carry this burden and appropriately the trial court entered judgment against them.

The contract expressly defines what actions will constitute "reasonable diligence." Specifically, the contract provided that in an effort to effectuate the contract "the requirement of reasonable diligence ... shall be deemed satisfied if the Buyer makes a loan application at three different lending institutions." It has never been denied by the defendants that only one loan application was made, to Mutual Savings in Jefferson City. Therefore, within the terms of the contract, defendants failed to exercise the "reasonable diligence" required to trigger the "null and void" language in the financing contingency clause. Defendants' claim that they were advised by the sellers' real estate agent to tender only one loan application is clearly at odds with express and unequivocal language in the contract and therefore must be disregarded. *See Norden v. Friedman*, 756 S.W.2d 158, 163 (Mo. banc 1988) (stating in dicta the general parol evidence rule).

Further, as to the single loan application to Mutual Savings, the extent of defendants' efforts to acquire this loan were limited to: (1) Completing a loan application; (2) an eleventh-hour contact with their real estate agent about the status of the loan on October 5, 1988, the day upon which the contract was to become void without financing; and (3) visiting Mutual Savings on October 7, 1988, two days after the financing contingency clause was to have nullified the contract. Defendants made no direct inquiries to Mutual Savings until after the October 5, 1988, deadline. Evidence at trial showed that Mutual Savings had issued the loan commitment on October 4, 1988. Merely phoning Mutual Savings on the 4th or 5th would have indicated to defendants that the loan had been approved. Oral assurance of the loan approval would have been sufficient to satisfy the financing contingency clause's requirement to "obtain" financing; no written, formal notice was required. *Kalina v. Eckert*, 345 Pa.Super. 220, 497 A.2d 1384, 1386 (Super.Ct.1985). Instead, defendants simply sat back and waited for the bank to come to them. This could hardly be characterized as fulfilling the requirement that defendants "actively seek financing" in good faith before relying on the financing contingency clause as a defense. *See Schottland*, 396 So.2d at 74.

The trial court, regardless of which definition of "obtain" was used, had a reasonable basis for finding the defendants to be liable on the contract. Defendants' point is denied.

## II.

■ Defendants next allege that the trial court erred in making an award of both damages and the earnest money to plaintiffs because the earnest money was to be the exclusive award in the event of a breach. Simply reading the contract and the judgment disposes of this argument.

The contract clearly states the remedies available to the seller in the event of a breach by the buyer. "The seller may elect to accept the earnest money as damages for Buyer's breach of this agreement or pursue other legal remedies, including but not limited to suit for specific performance or actual damages." The earnest money was the exclusive remedy only if plaintiffs chose it in lieu of pursuing other legal actions. Plaintiffs sought specific performance on the day of the breach and later damages in an amended petition. Clearly then, the earnest money was not the exclusive remedy available to plaintiffs.

Further, the judgment expressly states that in the award to plaintiffs, "defendants [are] given credit for $1,000, held in escrow by the Kinstler Agency." This credit represents the earnest money held in escrow. The court did not award damages in addition to the earnest money to plaintiffs. Rather, it simply applied the amount in

escrow towards satisfaction of the actual damages. Appellant's point is denied.

### III.

Defendants' final allegation of error relates to the evidence and measure of damages. The judgment against the defendants was for $10,968.00: $5,100 dollars representing the difference between the contract price and the actual sale price to a third-party; and $5,868 representing interest from a mortgage on the property paid by plaintiffs from October 19, 1988 (the proposed closing date with defendants), to July 18, 1989 (the date of the actual sale of the property to the third-party). Defendants' attack on the damage award is two-pronged: (1) Defendants claim that because the amended petition failed to state the contract sale price or the fair market value of the property there was no means to properly prove and compute damages; and (2) interest is not a proper element of damages.

■ The proper measure of damages when a seller sues the buyer for a breach of contract to purchase real estate is "the difference between the contract price and the value of the realty on the day the contract should have been completed." *Gilomen v. Southwest Missouri Truck Center, Inc.,* 737 S.W.2d 499, 501 (Mo.App. 1987); *see also Leonard v. American Walnut Co.,* 609 S.W.2d 452, 455 (Mo.App. 1980). Thus, to properly assess plaintiffs' damages, the trial court needed evidence of the contract price and market value.

■ While it is true that the amended petition did not state in exact dollar terms the contract price of the property, it is equally true that pleading with such specificity was not necessary for plaintiffs to make a submissible case for damages. "Our liberalized pleading practice tends to emphasize the evidence properly admitted as a standard for determining whether the issues submitted ... are properly in the case." *Hart v. Midkiff,* 321 S.W.2d 500, 507 (Mo.1959). Rule 55.33(b) states that issues tried by "implied consent" are treated as if they were raised in the pleading. Rule 55.33(b); *Springfield Gen. Osteo-*

*pathic Hosp. v. West,* 789 S.W.2d 197, 204 (Mo.App.1990). Evidence of the contract price was adduced at trial numerous times without objection from defendants and thus any alleged pleading inadequacies are irrelevant. *Hart,* 321 S.W.2d at 507. Further, defendants' argument that the petition did not state the contract price is tenuous. The amended petition stated, in close conjunction with the actual sale price, the difference between the contract price and the actual sale price. Simple mathematics reveals the contract price.

■ "[A]n essential element of the seller's case is proof of market value and if he does resell within a reasonable time after the breach, the price obtained is some evidence of market value." *Leonard,* 609 S.W.2d at 455. The property in question was resold on July 18, 1989, for $80,400.00 to an unrelated third party. Plaintiffs failed, however, in their case-in-chief, through testimony, documents, or other evidence, to prove the actual sale price. Despite this failure, the amended petition stated precisely the actual sale price, which was further amended (from $80,000.00 to $80,400.00) the day of trial with the consent of defendants. The actual sale price stated in the amended pleadings was not denied in defendants' Answer as required by Rule 55.07. Rule 55.07; *Thomas v. MRA,* 713 S.W.2d 570, 573–74 (Mo.App.1986). Accordingly, this failure to deny is treated as an admission by the defendants. Rule 55.-09; *Thomas,* 713 S.W.2d at 573. This admission is also manifested in defendants' acquiescence, on the day of trial, to plaintiffs modifying the amount of the actual sale price stated in the amended petition.

■ While the actual sale was not until approximately nine months after the proposed closing date between plaintiffs and defendants, the trial court did have some evidence of the market value of the property. *Leonard,* 609 S.W.2d at 455. Under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), we are not left with "a firm belief that the decree or judgment is wrong." *Id.* at 32. Therefore, reversing

the trial court on this ground is unwarranted.

 The trial court also awarded damages for interest paid by plaintiffs on a mortgage against the subject property between October 19, 1988, and July 18, 1989. Defendants attack the inclusion of interest payments as an element of damages. This attack, however, is without foundation. Interest payments are recognized by Missouri courts as a proper element of damages. *See Groppel Co. v. U.S. Gypsum Co.,* 616 S.W.2d 49, 63–64 (Mo.App.1981); *Herbert & Brooner Construction Co. v. Golden,* 499 S.W.2d 541, 550–51 (Mo.App.1973). Plaintiffs properly pleaded and proved these interest payments and therefore the trial court was not in error in including them in the damage award.

The judgment of the trial court is affirmed.

BERREY, J., concurs.

MANFORD, J., did not participate in the decision of this Court due to his death on February 12, 1991.