SEE, Justice
(dissenting).
The majority holds that because the Grants’ arbitration agreement with Palm Harbor and Minton is not supported by a legally binding contract, Palm Harbor and Minton cannot compel the Grants to arbitrate. I respectfully dissent.
First, the issue whether the arbitration clause, contained in the worksheet estimate, is supported by a legally binding contract is not properly before this Court. The Grants failed to challenge the validity of the contract at trial and therefore may not make such a challenge for the first time on appeal. See Abbott v. Hurst, 643 So.2d 589, 593 (Ala.1994) (stating in explicit terms that “[t]his Court will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court”); Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992) (same).
Second, the arbitration clause is in fact supported by a legally binding contract. The language in the worksheet estimate, which contains the arbitration clause, provides:
“Customer has executed a credit application in conjunction with this worksheet-estimate and understands that this is merely an estimate and there is no contractual obligation or right to buy until the customer’s credit has been approved and a retail installment contract or other contract or [sic] sale is signed by the customer. This worksheet-estimate may be subject to change.”
(Emphasis added.) After signing this worksheet-estimate, which contained the arbitration clause, the Grants did receive credit approval and signed a “retail installment contract or other contract” which described the same mobile home listed on the worksheet-estimate. See Stiegler v. Dittman, 584 So.2d 507, 511 (Ala.1991) (stating “[t]he controlling general principle of law is that two writings connected by reference one to the other, or made with respect to the same subject matter and proved to be parts of an entire transaction, constitute but a single contract as if embodied in one instrument”).
The majority disregards the “until the customer’s credit has been approved and a retail installment contract ... is signed” language contained in the worksheet-estimate. Instead of denying the existence of a contract, this language creates a condition precedent. Once the condition precedent is satisfied — in this case, the Grants’ receiving credit approval and signing an additional document — the worksheet-estimate becomes a binding contract.[1] See 3A Corbin on Contracts § 628, at 16 (1960); Duncan v. Rossuck, 621 So.2d 1313, 1314 (Ala.1993) (stating that “a contract provision making the contract subject to the procurement of a loan to finance the purchase price is a valid condition precedent to performance”); Schottland v. Lucas, 396 So.2d 72 (Ala.1981) (stating that a provision in the contract requiring the buyer to first obtain financing is a valid condition precedent to the creation of a binding contract). Therefore, the arbitration clause contained in the worksheet-estimate is binding and en *467 forceable.[2] See Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (stating that arbitration agreements are enforceable when they are encompassed in a valid contract involving interstate commerce).
I dissent.
HOOPER, C.J., and MADDOX, J., concur.

. In Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 616 (Ala.1997), the initial arbitration agreement signed by the plaintiff did not become part of the subsequent retail buyer's order because that order expressly provided that it "cancelled] and supersede[d] any prior agreement and ... comprise[d] the complete and exclusive statement of the terms of the Agreement.” There is no such exclusivity language in the retail installment contract signed by the Grants. Therefore, the subsequently executed retail installment contract in this case fulfilled a condition precedent to' the binding effect of the arbitration clause, and did not extinguish the arbitration clause.

. The majority also cites Ex parte Isbell, 708 So.2d 571 (Ala.1997) (on application for rehearing), for the proposition that Palm Harbor, as a nonsignatory to the arbitration agreement, cannot compel the Grants to arbitrate. This is inconsistent with the published opinions of the federal circuit courts of appeals that have interpreted the Federal Arbitration Act. See Isbell, 708 So.2d 571 (Hooper, C.J., dissenting) (citing Thomson-CSF, S.A. v. American Arbitration Ass’n, 64 F.3d 773, 779 (2d Cir.1995); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984)).