**Jerry J. SWARTZ and Renee Swartz, Appellants,**

v.

**Lynn MANN, Respondent.**

No. WD 64224.

Missouri Court of Appeals, Western District.

March 29, 2005.

Rex V. Gump, Moberly, MO, for appellants.

Terry A. Tschannen, Brookfield, MO, for respondent.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Appellants Jerry J. Swartz and Renee Swartz appeal from the summary judgment entered by the Circuit Court of Randolph County in favor of Lynn Mann. For the following reasons, we reverse and remand for further proceedings.

On June 27, 2001, real estate developer Lynn Mann entered into a real estate purchase agreement with Jerry J. Swartz and Renee Swartz. The contract provided for the purchase of various properties located in Randolph County, Grundy County, Texas County, Andrew County, Chariton County, and Harrison County, Missouri. In accordance with the contract, Mann placed a $25,000.00 earnest money deposit with the Swartzes' Century 21–McKeown and Associates ("Century 21") agent. The contract specified a purchase price of $3,465,000.00 and a closing date of January 2, 2002. The contract also contained a financing contingency clause:

> 6. Buyer's Contingencies. This Agreement is contingent upon Buyer obtaining financing for the purchase of the Property, at a reasonable commercial interest rate for 90% of the sales price.
>
> Buyer shall notify Seller in writing no later than thirty (30) days before Closing of any failure to meet this contingency, at which time this contract will terminate and Buyer shall be entitled to a refund of Buyer's deposit. If Buyer fails to notify Seller by that date then the above contingency shall be deemed to have been satisfied.
>
> If Buyer fails to close, Buyer shall pay the title search costs for each title insurance commitment incurred by Seller.

The contract also provided for liquidated damages in the event Mann defaulted in his contract performance, stating:

> 21. **Liquidated Damages and Attorney's Fees.** If Buyer defaults in the performance of this Agreement, resulting in a failure to close escrow, then Seller may retain Buyer's deposit or an

amount equal to 3% of the purchase price, whichever is the lesser, as liquidated damages, it being agreed that actual damages are difficult, if not impossible to ascertain.

After executing the contract, Mann sought financing with Citizen's Bank and Trust (Citizen's) of Moberly, Missouri. He provided the bank with a financial statement, indicating he had a net worth of $37,000,000.00. Ken Vik, a loan officer at Citizen's who had worked with Mann on previous lending transactions, assisted him with this matter. On November 29, 2001, Vik wrote Mann a letter advising him that Citizen's would only provide him with an 80% loan, not the 90% loan Mann sought to satisfy the contract's financing contingency.

In addition to Citizen's, Mann testified in his deposition that he provided tax returns and financial information to another bank in Moberly, Missouri, in an attempt to finance this transaction. He indicated that, although he and his realtor met with one of the bank's officers about this contract, this second Moberly bank failed to contact him again. Mann stated that he could not recall the name of this bank in downtown Moberly.

On December 26, 2001, the Swartzes and Mann executed a contract amendment that increased the sales price to $3,555,000.00 and extended the closing date from January 2, 2002, to April 2, 2002.

On February 25, 2002, more than thirty (30) days before the amended closing date, Mann faxed a letter to Century 21, the real estate broker involved in the transaction, notifying the Swartzes that he could not obtain satisfactory financing. The letter declared the agreement null and void and demanded the return of the $25,000.00 earnest money deposit previously placed in escrow.

Three days later, on February 28, 2002, Mann faxed a handwritten note to a Century 21 agent, indicating that "it would appear we could get this done" if the Swartzes would agree to carry 10% of the financing. He also inquired as to whether the deal was dead.

The transaction failed to close on April 2, 2002.

Subsequent to Mann's demand for the return of the $25,000.00 deposit, the Swartzes also made demand upon Century 21 for the deposit. On September 30, 2002, the Swartzes filed a petition in interpleader to recover the deposit. Answers, cross-claims, and counter-claims were filed by both parties. On July 28, 2003, Mann filed a motion for summary judgment. In granting his motion, the circuit court concluded that no genuine issue of material fact existed, declared Mann entitled to judgment as a matter of law, and granted Mann summary judgment. The court found that Mann "made a good faith effort to secure necessary financing," and it ordered the $25,000.00 deposit be returned to Mann. This appeal follows.

The Swartzes raise two points on appeal. First, they argue the trial court erred in granting Mann's summary judgment motion because genuine issues of material fact existed and Mann was not entitled to judgment as a matter of law. Second, they claim that the trial court erred in finding that Mann exercised reasonable diligence in his efforts to obtain financing as required by the real estate sales contract. In both points, the primary issue is whether Mann made a reasonable effort to obtain the financing set forth in the contract's financing contingency clause.

The standard of review on appeal from summary judgment requires that this court "review the record in the light most favorable to the party against whom judg-

ment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The non-movant receives the benefit of all reasonable inferences from the record. *Id.* On appeal, this Court's review is "essentially *de novo.*" *Id.* "The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. Summary judgment tests simply for the existence, not the extent, of these genuine disputes. Therefore, where the trial court, in order to grant summary judgment, must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment, summary judgment is not proper." *Id.* at 378. The same criteria for evaluating the propriety of summary judgment are used at both the trial and the appellate level. *Schembre v. Mid-America Transplant Ass'n,* 135 S.W.3d 527, 530 (Mo.App. E.D. 2004). Summary judgment will be upheld on appeal only if (1) no genuine disputes as to material facts exist and (2) movant possesses the right to judgment as a matter of law. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 380.

▆▆▆ Contract interpretation is a matter of law. *Housley v. Mericle,* 57 S.W.3d 360, 363 (Mo.App. S.D.2001). In Missouri, an implied covenant of good faith and fair dealing exists in every contract. *Id.* The law of Missouri imposes a "duty of reasonable diligence and good faith" in obtaining financing upon buyers entering into a contract containing a financing contingency provision. *Hoelscher v. Schenewerk,* 804 S.W.2d 828, 830 (Mo.App. W.D.1991). When a buyer enters into a purchase agreement subject to a contingency financing clause, the buyer has an *implied* obligation to undertake reasonable efforts to secure the financing set forth in contract. *See Id.; Housley,* 57 S.W.3d at 364;

*Grand & St. Louis Enters. v. Powell,* 807 S.W.2d 129, 130 (Mo.App. E.D.1991); *Goldberg v. Charlie's Chevrolet, Inc.,* 672 S.W.2d 177, 178 (Mo.App. E.D.1984); *Edward L. Bakewell, Inc. v. Kroeger,* 617 S.W.2d 447, 451 (Mo.App. E.D.1981).

▆▆▆ "It is held in Missouri that a provision in a real estate sales contract making the contract contingent upon the buyer's obtaining financing creates a condition subsequent. Upon the nonoccurrence of the condition (i.e. the buyer's obtaining financing), the buyer is ipso facto excused from performance." *Koontz v. Lee,* 737 S.W.2d 766, 768 (Mo.App. W.D. 1987). "However, this rule presumes that the buyer's failure to obtain financing was in good faith." *Howard v. Youngman,* 81 S.W.3d 101, 110 (Mo.App. E.D.2002). A buyer who fails to exercise good faith in obtaining financing "cannot rely on the contract's financing contingency provision to avoid liability on the contract." *Id.* (*citing Hoelscher,* 804 S.W.2d at 830).

▆▆▆ Whether buyers exercise reasonable diligence in obtaining financing pursuant to a contingent financing provision is a question of fact. *Johnson v. Gregg,* 807 S.W.2d 680, 686 (Mo.App. S.D.1991); *Alice Blake, Inc. v. Hoffman,* 620 S.W.2d 20,22 (Mo.App. E.D.1981). "It is a material fact because it is of such 'legal probative force as would control or determine the result of the litigation.'" *Alice Blake, Inc.,* 620 S.W.2d at 22 (*quoting State ex rel. McDonnell Douglas Corp. v. Gaertner,* 601 S.W.2d 295, 298 (Mo.App. E.D.1980)).

▆▆▆ While it is conceded by all that Mann applied for and was denied financing at Citizen's on November 29, 2001, the mere fact that he attempted to secure financing fails to warrant an order of summary judgment in his favor. *See Id.* The dispute between the parties is the extent of Mann's efforts to obtain financing. In

response to Mann's assertion in his motion for summary judgment that it was an uncontroverted fact that he had satisfied the financing contingency of the contract, the Swartzes pointed to Mann's deposition testimony that he made no material effort to obtain financing anywhere else than Citizen's Bank, and the fact that the Vik affidavit reflected that the initial proposal by Citizen's Bank to finance 80% predated the contract closing extension dated December 26, 2001. In addition, they cite to Vik's letter advising Mann that Citizen's would not finance more than 80%, which was dated November 29, 2001, and that in Ken Vik's deposition, he testified that on November 29, 2001, Mann told Vik that he would get his funds someplace else. But Mann testified that he never applied anywhere else after November 29, 2001, and this was 27 days before Mann's signing of closing extension agreement he requested. The Swartzes response also cites Mann's deposition testimony that he owns 2,200–2,300 acres in adjoining Macon County, as well as the USDA building in Livingston County, the Sydenstricker Farm Implement Building in Livingston County, and the USDA building in Trenton, Grundy County, Missouri; that all of these properties are financed through banks other Citizen's Bank; and that he did not apply to any of those banks. The Swartzes' response also referenced Mann's unaudited financial statement presented to Citizens Bank reflecting a $37,000,000 net worth and ownership of real estate in eight or nine states, as well as having real estate lending relationships with fifteen to twenty banks and financial organizations, and the testimony that he applied to none of them for a loan. While the Swartzes controverted many other factual issues, suffice it to say that they sufficiently controverted whether Mann had used sufficient diligence in pursuing financing so as to satisfy the contractual contingency.

Since the whole issue in the case is the factual question of whether Mann exercised reasonable diligence and good faith in trying to secure the necessary financing, and because this is a question of fact, dependent to a great extent on credibility determinations to be made by the fact finder as to what Mann did and when he did it in attempting to obtain financing, it is apparent that a genuine factual dispute remains. Accordingly, the trial court erred in finding that no material issue of genuine fact existed and in granting summary judgment to Mann.

Consequently, the trial court's grant of summary judgment to Mann is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.