# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1225

_____

| | |
|---|---|
| Contract Freighters, Inc., | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Western District of Missouri |
| J.B. Hunt Transport, Inc., | * |
| | * |
| Appellant. | * |

_____

Submitted: November 13, 2000

Filed: April 3, 2001

_____

Before McMILLIAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

J.B. Hunt Transport, Inc. (Hunt), appeals from a final judgment[1] entered in the United States District Court for the Western District of Missouri in favor of Contract Freighters, Inc. (CFI). For reversal, Hunt argues the district court erred in granting summary judgment as to liability and erred in its calculation of damages. We affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

The district court had jurisdiction over this diversity action under 28 U.S.C. § 1332. This court has appellate jurisdiction under 28 U.S.C. § 1291.

**BACKGROUND**

CFI, a Missouri corporation, and Hunt, a Georgia corporation, are trucking companies. On March 5, 1997, they executed a written contract in which Hunt agreed to purchase CFI's Kansas City, Missouri, terminal facility for $2,625,000.00. Paragraph 6 of the contract entitled Hunt to conduct an environmental audit and provided:

> [i]f the Environmental Audit reveals any matters which would be in violation of [CFI's environmental] representations contained in this Paragraph 6, then at [CFI's] sole option: (a) [CFI] shall remedy such items in accordance with applicable federal, state and local governmental directives, and the Closing Date shall be adjusted accordingly, or (b) [CFI] may elect to terminate this Agreement and [CFI] shall completely refund any portion of the Purchase Price previously paid to [CFI].

(Emphasis added.) Paragraph 5(C) of the contract provided, in part, that Hunt's obligation to purchase the property was conditioned upon CFI's "pre-Closing remedial action, if any pursuant to Paragraph 6." Paragraph 11 of the contract provided for a closing date of June 1, 1997, which was extended by agreement of the parties to September 30, 1997.

After an environmental audit revealed the presence of diesel fuel constituents at the site, Hunt wrote CFI that it was only interested in proceeding if CFI took steps to remedy the situation. In June 1997, CFI reported the matter to the Missouri Department of Natural Resources (MDNR) for investigation and submitted an application for review by the MDNR's voluntary cleanup program. In a letter dated September 11, 1997, MDNR stated that, based on resampling of the soil, no further

action was warranted, noting it would issue a "No Further Action" letter." CFI forwarded the September 11 letter to Hunt. On September 29, 1997, Hunt informed CFI that it would not close the sale because CFI had refused to clean up the contamination or take other alleviative action, such as providing an environmental insurance policy. On October 27, 1997, MDNR issued a "Certificate of Completion, Hazardous Substance Environment Remediation." The letter stated that "[s]oil sampling at the site indicated that contamination with diesel fuel . . . was below the cleanup objective for the site" and certified that "no remedial action [wa]s needed at the site." On November 1, 1997, CFI put the property back on the market. In May 1998, CFI executed a sale contract with Crete Carrier Corp. (Crete) for $2.2 million, which closed on August 24, 1998.

CFI then brought this action against Hunt for breach of contract. The district court granted CFI's motion for summary judgment as to liability. The district court rejected Hunt's argument that CFI had failed to meet a condition precedent by failing to remedy the contamination. The court reasoned that paragraph 6 unambiguously provided that CFI's obligation was to remedy an environmental contamination "in accordance with applicable federal, state and local governmental directives" and found that CFI had done so by obtaining the "no further action" letter from MDNR.

Because there were disputed issues of fact as to the property's fair market value as of September 30, 1997, the contract's closing date, the district court denied summary judgment as to damages and ordered a trial.[2] At the trial, in addition to presenting evidence of the $2.2 million sale price to Crete, CFI presented the testimony of Glen Brown, its CEO and president. Brown testified that, based on his knowledge and experience and on offers received for the property, the fair market value was between $1.7 and $2.2 million. The district court found that the fair market value of the

_____

[2]The parties consented to a bench trial before the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

property was the $2.2 million sale price to Crete and awarded CFI the difference between that amount and the $2,625,000.00 contract price and expenses for the upkeep of the property. In addition, to compensate CFI for the loss of investment income, the district court awarded prejudgment interest on the unpaid contract price from November 1, 1997, the date the property was put back on the market, to August 24, 1998, the date the Crete sale closed. After deducting certain credits and offsets, the district court found that, as of August 24, 1998, CFI's "shortfall" was $570,871.00. After awarding prejudgment interest on that amount, the district court entered judgment for CFI in the amount of $626,431.00, plus costs and interest from the date of trial and date of judgment.

**DISCUSSION**

**Liability**

We review the district court's grant of summary judgment de novo. Cronquist v. City of Minneapolis, 237 F.3d 920, 924 (8th Cir. 2001). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. Interpretation of an unambiguous contract provision is a question of law suitable for summary judgment. McCormack v. Citibank, N.A., 100 F.3d 532, 538 (8th Cir. 1996).

Hunt argues that the district court erred in granting summary judgment as to liability and did so by misinterpreting paragraph 6 of the contract, which provided that CFI "shall remedy [a contamination] in accordance with applicable federal, state and local governmental directives." Hunt does not dispute that Missouri law applies and that MDNR was the applicable governmental agency, but argues MDNR's no-further-action finding did not relieve CFI of its contractual obligation to remedy the contamination. According to Hunt, paragraph 6 unambiguously required CFI to remedy the contamination as long as the remedy was one that MDNR would have approved.

Alternatively, Hunt argues summary judgment was inappropriate because, at a minimum, paragraph 6 was ambiguous as to CFI's contractual obligation. Hunt's arguments are without merit. "Under Missouri law [a court] must enforce a contract as written and according to the plain meaning of the words in the contract when the contract is clear and unambiguous." Farmland Indus., Inc. v. Frazier-Parrott Commodities, 111 F.3d 588, 590 (8th Cir. 1997) (Farmland Indus.). "An ambiguity exists when a contract is susceptible to more than one reasonable interpretation." Id.

Reviewing the question of whether an ambiguity exists de novo, see id., we hold that paragraph 6 unambiguously provided that CFI's only contractual obligation was to remedy a contamination "in accordance with" a "directive" from MDNR. A "directive" is "[a]n order or instruction, especially one issued by a central authority." The American Heritage Dictionary of the English Language 512 (4th ed. 2000). On September 30, 1997, there was no order or instruction from MDNR to remediate the site. To the contrary, by that date, MDNR had found no remediation was required. Thus, CFI did all that it was contractually obligated to do. Moreover, Hunt's interpretation is unreasonable. Paragraph 6 does not refer to approval by a governmental agency, but to a directive by one. Nor does the paragraph give Hunt the right to approve a remedy. Indeed, it gives CFI the "sole option" to follow a governmental directive or to terminate the contract and refund any money due Hunt.

We also reject Hunt's argument that the contract had expired before MDNR had formally issued the no-further-action letter in October 1997. As CFI notes, Hunt had repudiated the contract before the closing date of September 30. Moreover, paragraph 6 did not require as a condition of closing an issuance of a formal no-further-action letter, but only that CFI remedy the contamination in accordance with a governmental directive. Because CFI had fulfilled its contractual obligation, as the district court held, Hunt breached the contract by failing to close. Thus, the district court did not err in granting CFI summary judgment as to liability.

**Damages**

Hunt also challenges the district court's calculation of damages. As an element of damages in a Missouri breach-of-contract suit, a prevailing seller is entitled to the difference between the contract price and the fair market value of the property as of the date the contract should have closed. Gilmartin Bros., Inc. v. Kern, 916 S.W.2d 324, 332 (Mo. Ct. App. 1995) (Gilmartin). Hunt argues that the district court erred in relying on the Crete $2.2 million sale price as evidence of fair market value. This argument also is without merit. Missouri courts have held that "[i]f the seller decides to resell in a reasonable time after the breach, the price obtained is some evidence of the market value." Id. (holding sale 6 months later sufficient evidence); see also Hawkins v. Foster, 897 S.W.2d 80, 86 (Mo. Ct. App. 1995) (holding sale 11 ½ months later sufficient evidence); Hoelscher v. Schenewerk, 804 S.W.2d 828, 832 (Mo. Ct. App. 1991) (holding sale 9 months later sufficient evidence). Here, Crete contracted to buy the property within eight months of the breach, and as CFI notes, the property was in the same condition. Although Crete was aware of the contamination, it also was aware that no remediation was required. Moreover, we note Brown's testimony that the fair market value of the property was between $1.7 and $2.2 million, and especially note that Hunt failed to present any valuation evidence. See Gilmartin, 916 S.W.2d at 332 (holding that because defendants "did not present any evidence of the market value . . . [t]hey . . . failed to show how the amount calculated by the court as the market value is unsupported by substantial evidence").

Hunt next argues that the district court erred in awarding CFI prejudgment interest under Rev. Mo. Stat. § 408.020 on the contract price from the date CFI put the property back on the market until the sale to Crete.[3] In support, Hunt relies on the general rule in Missouri that prejudgment interest is awarded "when the amount due on

---

[3]In a diversity action state law governs the prejudgment interest rate. See Berglund v. State Farm Mut. Auto. Ins. Co., 121 F.3d 1225, 1230 (8th Cir. 1997).

a party's contract is liquidated, that is, fixed or certain[,]" Farmland Indus., 111 F.3d at 592, and argues that here the amount due was not certain until the determination of fair market value. Because there are many exceptions to the general rule, Hunt's reliance on it is misplaced. See id. "The Missouri Supreme Court has carved out [one] exception because prejudgment interest has traditionally been used to compensate a party for the loss of the use of money to which the party was entitled." Id. (citing Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo. 1987)); see also Gilmartin, 916 S.W.2d at 328 n.2; Ward v. J & M Farms, Inc., 843 S.W.2d 6, 7 (Mo. Ct. App. 1992) (per curiam) (Ward); Conway v. Judd, 723 S.W.2d 905, 909 (Mo. Ct. App. 1987). Here, the district court did not err in awarding CFI prejudgment interest on the contract price from the date the property was put back on the market to the Crete closing date "in order to compensate [CFI] for its loss of investment income." For the same reason, the district court properly awarded CFI prejudgment interest on the amount of damages from the date of the Crete closing to the trial date. We note that "[i]n an action for breach of contract, interest ordinarily runs from the date of the breach or the time payment was due under the contract." Wulfing v. Kansas City Southern Indus., Inc., 842 S.W.2d. 133, 161 n.16 (Mo. Ct. App. 1992) (internal quotation omitted). In addition, the district court properly followed Missouri law by crediting Hunt with $116,672.00 in income CFI had received by renting the property after the breach. See Ward, 843 S.W.2d at 7 (holding party should not "be able to enjoy both the beneficial use of the property and the use of the purchase money without being held accountable in some manner to the other party").

Accordingly, we affirm the district court's judgment.[4]

---

[4]We deny CFI's motion to strike portions of Hunt's brief and supporting material as moot.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.