# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3252

_____

| | | |
|---|---|---|
| Kurt R.E. Madsen, D.O., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Audrain Health Care, Inc., doing | * | District of Missouri. |
| business as Audrain Medical | * | |
| Center, Joseph A. Corrado, M.D., | * | |
| Michael D. Jones, M.D., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: April 18, 2002

Filed: July 18, 2002

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant Dr. Kurt Madsen appeals the order of the district court dismissing each count in his complaint. Upon review de novo, we affirm in part and reverse in part.

## I.    BACKGROUND

For purposes of our review, we accept as true the factual allegations in Madsen's complaint. Botz v. Omni Air Int'l, 286 F.3d 488, 490 (8th Cir. 2002). Dr. Madsen is a licensed physician specializing in orthopedics medicine who worked in Mexico, Missouri, for Audrain Health Care, Inc. In his complaint, Madsen alleges that on August 14, 1997, he entered into a contract ("Physician Agreement") with Audrain, which provided for Madsen to establish an orthopedic medical practice in Mexico in return for a guaranteed minimum income paid by Audrain. On September 1, 1998, Madsen applied for and was granted medical staff privileges at the hospital. On September 24, 1998, Madsen alleges that Dr. Corrado and Dr. Jones, Chief of Staff and Chief of Surgery at Audrain respectively, contacted him with concerns they had regarding Madsen's practice and skills. Madsen further alleges that on November 19, 1998, he was again called to meet with Corrado, Jones, and Garf Thomas, Audrain's administrator, to further discuss these concerns. Following these communications, the hospital brought a complaint against Madsen before the Medical Staff Executive Committee. Madsen alleges that the Executive Committee made certain adverse recommendations in response to the complaint and forwarded its report to Audrain's Medical Staff Board of Directors for approval.

When Madsen received notice of the Executive Committee's adverse recommendations, he requested a hearing before an ad hoc committee of Audrain's Medical Staff, as provided for in the Medical Staff Bylaws. At this hearing, held February 25, 1999, the only evidence presented by Jones, Corrado, and the hospital, was Jones' statement. Madsen points out in his complaint that he presented several witnesses, including a Board Certified Orthopedic Surgeon who reviewed every patient chart at issue and found no indication of any need to reduce Madsen's privileges. Following this hearing, the Executive Committee's recommendation remained adverse to Madsen. Madsen sought appellate review before the Board, which concluded that the recommendations were "justified and not arbitrary or

-2-

capricious" and therefore adopted them as a final decision. Madsen was notified on May 5, 1999. This final Board action was reported to the Missouri State Board of Registration for the Healing Arts and the National Practitioner Data Bank.

Madsen alleges that as a direct result of the defendants' wrongful acts, he was forced to close his profitable practice in Missouri and relocate to Indiana. Count I of Madsen's complaint alleges that Audrain breached the Physician Agreement by causing his privileges at Audrain to be adversely impacted, thus terminating Audrain's obligation to guarantee compensation to Madsen. Madsen brings Count II against all defendants alleging that they tortiously interfered with his business relationships and expectancies with his patients. Count III, against Audrain, alleges that Audrain's Medical Staff Bylaws constitute a contract between Audrain and Madsen and that Audrain breached this contract. Count IV, against Jones and Corrado, alleges that they conspired to cause Audrain to breach and terminate the Physician Agreement. In Count V, Madsen alleges that Jones and Corrado conspired to cause Audrain to breach and terminate the Medical Staff Bylaws, which Madsen claims support a contractual relationship between the parties. Madsen seeks a declaratory judgment in Count VI, declaring that the adverse decision is unjustified, arbitrary, and capricious. Madsen further requests that this declaratory judgment be communicated to the Missouri Board of Registration for the Healing Arts, the National Practitioner Data Bank, and all other persons or entities to whom such adverse decision was communicated. Finally, in Count VII, Madsen alleges that all of the defendants maliciously communicated false information about him to others, including actual and potential patients and state and federal agencies, damaging his reputation and earning potential.

## II.    DISCUSSION

We review de novo the district court's grant of the defendants' 12(b)(6) motion to dismiss. Omni, 286 F.3d at 491. We construe Madsen's complaint in the light

most favorable to him and determine whether he can prove any set of facts that would entitle him to relief.  Id.

## A.  Count IV

Before we reach the merits of this appeal, we must first resolve the unique procedural posture created by the district court's dismissal of Count IV at Madsen's request.  Count IV, which survived the defendants' motion to dismiss, alleges that defendants Jones and Corrado individually conspired to cause Audrain to breach and terminate the Physician Agreement with Madsen.  Although this count was not dismissed by the district court in its December 7, 1999, memorandum and order, Count IV was later dismissed without prejudice per Madsen's suggestion at a hearing concerning Madsen's motion to alter or amend judgment.[1]  Although the district court did not clearly articulate the basis for the dismissal of Count IV in its order, we presume that this dismissal was entered pursuant to Federal Rule of Civil Procedure 41(a) (2), which allows for dismissal of actions by court order.  Madsen's intentions with respect to Count IV are unclear.

Clearly Madsen sought dismissal of Count IV to allow immediate appeal of the court's otherwise interlocutory order when the district court denied Madsen's request to amend the earlier dismissal of all other counts.  During briefing and at oral argument, Madsen only sought reinstatement of Counts I, II, III, V, VI and VII.  The

---

[1]Madsen boldly challenges the "flawed logic" of the district court in that it dismissed Count I of the complaint, which alleged breach of contract with regard to the Physician Agreement, while allowing Count IV, which alleged tortious interference with that same agreement by Drs. Jones and Corrado.  Madsen's own logic eludes us.  Count I was dismissed because a private hospital has discretion regarding its exclusion of a physician or surgeon from practicing therein.  This certainly does not mean the Physician Agreement is wholly unenforceable in other respects.

question before us is whether the district court abused its discretion when it dismissed Count IV without prejudice for the purpose of allowing Madsen to appeal the dismissal of the remaining claims. See Great Rivers Coop. v. Farmland Indus., Inc., 198 F.3d 685, 689 (8th Cir. 1999). Our precedent in this type of case does not bode well for Madsen. In fact, "[i]n most cases . . . a district court does abuse its discretion when it frustrates the limitations on federal appellate jurisdiction by entering a Rule 41(a)(2) order dismissing remaining claims without prejudice for the purpose of facilitating the immediate appeal of an earlier interlocutory order." Id. at 689-90.

Under these circumstances, the question of remedy looms. "In most cases, the proper remedy will be to reverse the Rule 41(a)(2) order and remand for completion of the case, without considering the merits of the earlier interlocutory order(s)." Id. at 690. We may also deem the ambiguous voluntary dismissal of Count IV to be *with prejudice* and go on to consider the appeal from the district court's dismissal of all remaining claims. Id.; see also Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1245 (8th Cir. 1994). Madsen may not evade the final judgment requirement of Federal Rule of Civil Procedure 54(b) by seeking a non-prejudicial dismissal of Count IV. Minnesota Pet Breeders, 41 F.3d at 1245. Under this rubric, we choose the latter remedy, discussed at oral argument,[2] and deem Madsen's request for dismissal of Count IV to be with prejudice.

## B.    Counts I and II

In addressing Counts I and II of Madsen's complaint, the district court turned to Cowan v. Gibson, 392 S.W.2d 307 (Mo. 1965). In Cowan, a physician who had

---

[2]Madsen was notified at oral argument of the risk of losing Count IV altogether if he proceeded under the current procedural posture. He assured the court that treating Count IV as being dismissed with prejudice would not hurt the case and proceeded to argue, as he did in briefing, what he considers to be the "meat of the case."

been denied reinstatement to a hospital's medical staff alleged a wrongful conspiracy to exclude him and to injure him in the practice of medicine. Id. at 308. The Missouri Supreme Court reiterated the general rule that "'the exclusion of a physician or surgeon from practicing [in a private hospital] is a matter which rests in the discretion of the managing authorities.'" Id. (quoting Annotation 24 A.L.R.2d 850, 852). However, Cowan was not "a suit between the doctor and the hospital or its governing board or staff alone in their hospital character and capacities." Id. at 309. Because the physician named two doctors in their individual capacity alleging "that the two doctors in their personal professional capacities conspired with hospital board members to the end and for the purpose of interfering with Dr. Cowan and his contractual rights with his patients all to their financial advantage–all of which [was] outside the operation and government of the hospital," the allegations fell outside of the general rule and the case was remanded. Id.

In Count I, Madsen alleges breach of contract by the hospital with respect to the Physician Agreement. Count II alleges tortious interference with business relationships against all defendants. As explained by the district court, nothing in Madsen's complaint removes it from the general rule that the exclusion of a physician from practicing in a private hospital is a discretionary matter resting with the managing authorities. Id. at 308. This is a suit between a doctor and the hospital and its governing staff in their hospital character and capacities. Further, contrary to Madsen's argument, no factual determination is required. The construction of an unambiguous contract is a question of law for the court. Contract Freighters, Inc. v. J.B. Hunt Transport, Inc., 245 F.3d 660, 663 (8th Cir. 2001) (applying Missouri law). The Physician Agreement provides that if Madsen loses staff privileges at Audrain, such action terminates the agreement. Thus, termination is not a breach of contract, but instead, is expressly provided for in the contract. The rule from Cowan applies and Counts I and II were appropriately dismissed.

## C.    Counts III and V

The district court determined that the Medical Staff Bylaws were not incorporated into the Physician Agreement and dismissed Counts III and V accordingly. We agree with the reasoning of the district court as to these counts. The mere reference in the Physician Agreement to the Medical Staff Bylaws does not create a contractual relationship between Madsen and Audrain with regard to those Bylaws in their entirety. The Medical Staff Bylaws were not incorporated into the Physician Agreement, as Madsen argues, and are not part of the terms of the contract that existed between these parties. Accordingly, there is no basis for Madsen's claims of breach of contract or tortious interference with the Medical Staff Bylaws.

In Zipper, D.O. v. Health Midwest, 978 S.W.2d 398 (Mo. Ct. App. 1998), the Missouri court held that "hospital bylaws cannot be considered a contract under Missouri law because consideration is lacking." Id. at 416. Madsen correctly notes that in some instances a hospital can be subjected to contractual enforcement of its Medical Staff Bylaws if a contractual relationship is established in a separate document. Id. at 417. However, like in Zipper, procedures purportedly available to Madsen through Audrain Bylaws are not set forth in a separate document. The limited reference to the Bylaws in the Physician Agreement is insufficient to support the creation of a separate contractual relationship. Madsen alleges that the Medical Staff Bylaws were incorporated in three ways–by way of the implied terms of the contractual relationship of the parties, directly incorporated in the Physician Agreement, and by subsequent agreements of the parties. We disagree.

Any reference to the Bylaws in the Physician Agreement is cursory, and only then articulates what Madsen's responsibilities are in relation to his contracted obligations. For example, the Physician Agreement in section 1.2 states that "[d]octor shall perform the duties described in this Section 1.2, and such duties shall be performed, in accordance with the bylaws, policies and rules of the Hospital and the

Medical Staff."  Requiring that Madsen act in accordance with the Medical Staff Bylaws is hardly incorporation of the Bylaws in their entirety, binding both parties. Further, the fact that the Medical Staff Bylaws were specifically binding on Madsen as part of the contractual relationship, does not necessarily mean that the parties reciprocally contracted for the same as to Audrain.  "There is no necessity 'that for each stipulation in a contract binding the one party there must be a corresponding stipulation binding the other.'"  Laclede Gas Co. v. Amoco Oil Co., 522 F.2d 33, 36 (8th Cir. 1975) (quoting James B. Berry's Sons Co. v. Monark Gasoline & Oil Co., 32 F.2d 74, 75 (8th Cir 1929).  So even recognizing the potential for hospitals to separately create a contractual relationship with their physicians under their bylaws, it did not exist in this instance.

Finally, Missouri law in this respect is clear.  The expressed policy in Missouri is the assurance of quality health care, which is unduly impinged by allowing a physician to seek damages for an alleged failure of a hospital to follow the procedures established by its bylaws.  Zipper, 978 S.W.2d at 417.  The district court appropriately dismissed Counts III and V of Madsen's complaint.

### D. Counts VI and VII

The district court dismissed Madsen's Count VI, seeking a declaratory judgment, and Count VII, which alleges that all defendants committed slander, holding that the rule in Cowan requires dismissal of both counts.  Cowan certainly addresses Count VI of Madsen's complaint but we fail to see how Cowan is instructive on Count VII.

In Count VI, Madsen alleges that the decision adverse to Madsen should be declared unjustified, arbitrary and capricious, and ordered to be set aside in toto, and that such finding be communicated to the Missouri Board of Registration for the Healing Arts, the National Practitioner Data Bank and all other persons or entities to

-8-

whom such adverse decision was communicated.  Because we previously determined that nothing in Madsen's complaint removes it from the general rule that the exclusion of a physician from practicing in a private hospital is a discretionary matter resting with the managing authorities, there is no support for a declaratory judgment in this regard.  As such, we affirm the district court's dismissal of Count VI.

As to Count VII, we must remember at what stage of the proceedings these determinations are being made.  "In reviewing a motion to dismiss, we construe the complaint liberally, taking all factual allegations as true, and 'will affirm only if it appears beyond doubt that [the plaintiff] cannot prove any set of facts in support of [the] claim which would entitle [him] to relief.'" Turner v. Holbrook, 278 F.3d 754, 757 (8th Cir. 2002) (quoting Sisley v. Leyendecker, 260 F.3d 849, 850 (8th Cir. 2001)).  Further, "[a]t the pleading stage, 'we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."'" American Canoe Ass'n, Inc. v. E.P.A., 289 F.3d 509, 512 (8th Cir. 2002) (quoting Bennett v. Spear, 520 U.S. 154, 168 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  Given the legal standard at this stage in the proceedings, we find no basis for the dismissal of Count VII.  Madsen properly alleges each element of his slander claim in his complaint.  Cowan is wholly inapplicable in this regard and the district court did not provide any explanation illuminating its conclusion that Cowan provided the basis for its dismissal of Count VII.

The general rule that "'the exclusion of a physician or surgeon from practicing [in a private hospital] is a matter which rests in the discretion of the managing authorities,'" Cowan, 392 S.W.2d at 308 (quoting Annotation 24 A.L.R.2d 850, 852), would not dispose of a claim of slander such as that raised by Madsen in Count VII.  At the very least, we cannot state with certainty at this stage that Madsen is unable

to prove any set of facts that would entitle him to relief.[3] Accordingly, we reverse the district court's dismissal of Count VII.

## III.  CONCLUSION

The district court properly dismissed Counts I, II, III, V, and VI of Madsen's complaint.  We reverse the district court's dismissal of Count VII and deem Count IV dismissed with prejudice.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Defendants argue that the Health Care Quality Improvement Act, 42 U.S.C. § 11101 et seq., grants immunity from any civil liability in this case.  However, "HCQIA immunity is a question of law for the court to decide and may be resolved whenever the record in a particular case becomes sufficiently developed."  Bryan v. James E. Holmes Reg'l Med. Ctr., 33 F.3d 1318, 1332 (11th Cir. 1994).  We have no record to speak of on a motion to dismiss, thus any analysis in this regard is premature.