# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-1951

_____

| | | |
|---|---|---|
| Stephen P. Schoemehl, Trustee for the IBEW Local No. 1 Health and Welfare Fund; Eric Aschinger, Trustee for the IBEW Local No. 1 Health and Welfare Fund; Daniel Schaeffer, Trustee for the IBEW Local No. 1 Health and Welfare Fund; Douglas Martin, Trustee for the IBEW Local No. 1 Health and Welfare Fund; Joseph Cousin, Trustee for the IBEW Local No. 1 Health and Welfare Fund; Matthew Lampe, Trustee for the IBEW Local No. 1 Health and Welfare Fund; Local 1 IBEW Health and Welfare Fund; Stephen P. Schoemehl, Trustee for the Local No. 1, IBEW Pension Benefit Trust Fund; Mike Kranefuss, Trustee for the Local No. 1, IBEW Pension Benefit Trust Fund; T. Michael Fogarty, Sr., Trustee for the Local No. 1, IBEW Pension Benefit Trust Fund; Douglas Martin, Trustee for the Local No. 1, IBEW Pension Benefit Trust Fund; Michael Garavaglia, Trustee for the Local No. 1, IBEW Pension Benefit Trust Fund; Greg Booth, Trustee for the Local No. 1, IBEW Pension Benefit Trust Fund; Local No. 1, IBEW Pension Benefit | * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | On Appeal from the United States District Court for the Eastern District of Missouri [UNPUBLISHED] |

Trust Fund; Stephen P. Schoemehl,                    *
Trustee for the IBEW Vacation Fund;                  *
Timothy Schoemehl, Trustee for the                   *
IBEW Vacation Fund; Thomas George,                   *
Sr., Trustee for the IBEW Vacation                   *
Fund; Douglas Martin, Trustee for the                *
IBEW Vacation Fund; Roger Oertli,                    *
Trustee for the IBEW Vacation Fund;                  *
Robert Senf, Trustee for the IBEW                    *
Vacation Fund; IBEW Vacation Fund;                   *
Stephen P. Schoemehl, Trustee for the                *
IBEW, Local 1, Apprenticeship and                    *
Training Fund; Stephen Kohnen,                       *
Trustee for the IBEW, Local 1,                       *
Apprenticeship and Training Fund;                    *
Robert Kaemmerlen, Jr., Trustee for                  *
the IBEW, Local 1, Apprenticeship                    *
and Training Fund; Douglas Martin,                   *
Trustee for the IBEW, Local 1,                       *
Apprenticeship and Training Fund;                    *
Thomas George, Sr., Trustee for the                  *
IBEW, Local 1, Apprenticeship and                    *
Training Fund; Dan King, Trustee for                 *
the IBEW, Local 1, Apprenticeship                    *
and Training Fund; Local No. 1IBEW                   *
Apprenticeship and Training Fund;                    *
Stephen P. Schoemehl, Trustee for the                *
IBEW-NECA Holiday Trust Fund;                        *
Robert Senf, Trustee for the IBEW-                   *
NECA Holiday Trust Fund; Douglas                     *
Martin, Trustee for the IBEW-NECA                    *
Holiday Trust Fund; Roger Oertli,                    *
Trustee for the IBEW-NECA Holiday                    *
Trust Fund; Thomas George, Sr.,                      *
Trustee for the IBEW-NECA Holiday                    *
Trust Fund; John Johanningmeier,                     *
Trustee for the IBEW-NECA Holiday                    *

-2-

Trust Fund; IBEW-NECA Holiday            *
Trust Fund; Stephen P. Schoemhl,         *
Trustee for the Electricians' Income     *
Security Fund; Charles Pavelec,          *
Trustee for the Electricians' Income     *
Security Fund; Douglas Martin,           *
Trustee for the Electricians' Income     *
Security Fund; Roger Oertli, Trustee     *
for the Electricians' Income Security    *
Fund; Greg Booth, Trustee for the        *
Electricians' Income Security Fund;      *
Thomas George, Sr., Trustee for the      *
Electricians' Income Security Fund;      *
Electricians' Income Security Fund;      *
Stephen P. Schoemehl, Trustee for the    *
Electricians' Salary Deferral Plan;      *
Thomas George, Sr., Trustee for the      *
Electricians' Salary Deferral Plan;      *
Thomas Sansevere, Trustee for the        *
Electricians' Salary Deferral Plan;      *
Douglas Martin, Trustee for the          *
Electricians' Salary Deferral Plan;      *
Robert Unterriener, Trustee for the      *
Electricians' Salary Deferral Plan;      *
George Azzanni, Trustee for the          *
Electricians' Salary Deferral Plan;      *
Electricians' Salary Deferral Plan;      *
Stephen P. Schoemehl, Director for       *
the NECA-IBEW Market Research            *
Development and Public Relations         *
Fund The NECA Administrative             *
Maintenance Fund and Substance           *
Abuse Program; Timothy Schoemehl,        *
Director for the NECA-IBEW Market        *
Research Development and Public          *
Relations Fund The NECA                  *
Administrative Maintenance Fund          *

and Substance Abuse Program;    *
Matthew Lampe, Director for the    *
NECA-IBEW Market Research    *
Development and Public Relations    *
Fund The NECA Administrative    *
Maintenance Fund and Substance    *
Abuse Program; Dennis Hornberger,    *
Director for the NECA-IBEW    *
Market Research Development and    *
Public Relations Fund The NECA    *
Administrative Maintenance Fund    *
and Substance Abuse Program;    *
Daniel Schaeffer, Director for the    *
NECA-IBEW Market Research    *
Development and Public Relations    *
Fund The NECA Administrative    *
Maintenance Fund and Substance    *
Abuse Program; Douglas Martin,    *
Director for the NECA-IBEW    *
Market Research Development    *
and Public Relations Fund The    *
NECA Administrative Maintenance    *
Fund and Substance Abuse Program;    *
NECA-IBEW Market Research    *
Development and Public Relations    *
Fund; The NECA Administrative    *
Maintenance Fund and Substance    *
Abuse Program; D. R. Borden, Jr.,    *
Trustee for the National Electrical    *
Benefit Fund; Jon Walters, Trustee    *
for the National Electrical Benefit    *
Fund; National Electrical Benefit    *
Fund; Local 1 International    *
Brotherhood of Electrical Workers,    *
AFL-CIO,    *
   *
       Appellants,    *
   *

v.                                        *
                                          *
Renaissance Electric Company, Inc.;       *
Daktronics, Inc.; Hunt Construction       *
Group, Inc.,                              *
                                          *
           Appellees.                     *

                          _____

                 Submitted: December 12, 2008
                     Filed: June 9, 2009

                          _____

Before MELLOY and BENTON, Circuit Judges, and MAGNUSON,[1] District
    Judge.

                          _____

MAGNUSON, District Judge.

       Appellants appeal the District Court's dismissal for failure to state a claim of
two counts of Appellants' Amended Complaint against Appellees Hunt Construction
Group, Inc. ("Hunt") and Daktronics Inc. ("Daktronics"). For the reasons that follow,
we affirm.

                                         I.

       Appellants are trustees of various union benefit plans and funds (collectively,
the "Funds"). Hunt was the general contractor overseeing the construction of the new
Busch Stadium in St. Louis, Missouri. Hunt contracted with Daktronics to construct
and install electric signs in the stadium. Daktronics in turn subcontracted with

_____

       [1]The Honorable Paul A. Magnuson, United States District Judge for the District
of Minnesota, sitting by designation.

Renaissance Electric, Inc. ("Renaissance")[2] to install the signs. Hunt had previously entered into a Project Labor Agreement ("PLA") with the owner of the stadium and various unions. Section 4.09 of the PLA states:

> Project Contractor and its Subcontractors performing Construction Work on the Project shall pay into fringe benefit funds directly accrued to the employees (such as pension, health and welfare, training, vacation, holiday, income security, annuity, etc.,) and hereby adopts and agrees to be bound by the written terms of legally established trust agreements specifying the detailed basis on which payments are to be made into, and agrees to accept as its representatives in administration of such funds, the Management and Labor Trustees servicing such funds. Subcontractors agree to execute a Participation Agreement and any other documents reasonably necessary or appropriate to effect their obligations with respect to such fringe benefit payments. The Owner shall support the Unions to the extent possible within the bound of this Agreement in resolving any issues related to Project Contractor's or its Subcontractor's payment of fringe benefits. Upon receipt of notice from any Union that fringe benefit contributions have not been paid to the Union for the previous month for work performed on the Project, Owner and Project Contractor will withhold an equal amount from the Subcontractor's current pay application until the contribution has been paid, and Project Contractor shall have the right to make fringe benefit contributions on behalf of any Subcontractor who has failed to timely make such contributions.

(App'x at 74.)

---

[2] The Funds originally named only Renaissance as a defendant. The Funds then amended their complaint to include Hunt and Daktronics. Renaissance failed to file a responsive pleading and the District Court entered a default judgment against it. Although the Funds did not adversely affect their right to sue Hunt and Daktronics by failing to join them as defendants in the original complaint, their failure to do so certainly belies the arguments they raise here.

In the first half of 2006, Renaissance was obligated to contribute $190,000 to the Funds based on work performed by Renaissance employees. None of Appellees have made any payments to the Funds to satisfy the delinquent amount. The District Court[3] granted Hunt and Daktronics's motion to dismiss the Funds' claims against them based on its interpretation of the word "employees" in the provision of the PLA quoted above. The District Court held that the provision unambiguously required each employer to make contributions only for work completed by its own employees; therefore, neither Hunt nor Daktronics was liable to the Funds for the contributions accrued for work completed by Renaissance's employees. The District Court further held that the Funds failed to allege that they had notified Hunt of Renaissance's delinquency, thereby triggering Hunt's right to satisfy any amounts owed by Renaissance. Finally, the District Court held that the PLA's collective reference to Hunt and its subcontractors as "the Employer" did not by itself create an employer/employee relationship.

II.

This Court reviews a dismissal under Rule 12(b)(6) de novo, "applying the same standards as the district court." Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003). "At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008), cert. denied 129 S. Ct. 222 (2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)). Construction of an unambiguous contract is a question of law for the Court to determine. Contract Freighters, Inc. v. J.B. Hunt Transp., Inc., 245 F.3d 660, 663 (8th Cir. 2001).

---

[3]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

A.

The outcome of this case hinges on the interpretation of the phrase "the employees" in the first sentence of Section 4.09. The District Court held that Section 4.09 required each employer to make contributions only on behalf of its own employees. The Court agrees with the District Court's interpretation of Section 4.09.

In passing on whether a particular contractual provision is ambiguous, the Court is to give the words used their ordinary meanings. See Press Machinery Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 784 (8th Cir. 1984). An employee is ordinarily "[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." Black's Law Dictionary (8th ed. 2004). As will be discussed in more detail below, there is no reason that the term "employees" in the PLA should have anything other than its ordinary meaning. Therefore, the first sentence of Section 4.09 obligates Hunt and Daktronics to make contributions only on behalf of persons who were working "in the service of" Hunt and Daktronics, respectively.

The structure of Section 4.09 requires the same result. The reference to "the employees" in the first sentence of Section 4.09 must be interpreted within the context of the provision as a whole. The last sentence of that section requires Hunt, on proper notice, to withhold from its subcontractors an amount equal to any unpaid contributions, and authorizes Hunt to make the contributions on behalf of the subcontractor.[4] If the first sentence of Section 4.09 required Hunt to make the contributions owed by its subcontractors, as the Funds contend, then the last sentence of that provision would be rendered meaningless. The Court rejects such an

---

[4]The Funds have not alleged that they gave proper notice to Hunt of Renaissance's delinquency, thereby triggering Hunt's obligation to withhold the delinquent payments from Renaissance.

interpretation. See Beister v. John Hancock Mut. Life Ins. Co., 356 F.2d 634, 641 (8th Cir. 1966) ("Another rule for construction of contracts is that interpretations should be sought that give meaning to all parts of the contract, and interpretations which render meaningless parts of the contract should be avoided.").

The myriad uses of the word "employees" in other parts of the PLA do not require a different interpretation of Section 4.09. Although the Court agrees with the Funds that "[a]s a whole, the PLA is hardly a model of clarity" (Appellants' Brief at 31), the use of "employees" in Section 4.09 is unambiguous. That the same word was used to mean something else in other parts of the PLA does not make its meaning in the context and structure of Section 4.09 ambiguous.

The Funds also argue that the PLA must be interpreted within the context of ERISA and labor law, and that the definitions of "employer" and "employees" from those bodies of law preclude the District Court's interpretation of Section 4.09. However, neither of the definitions suggested by the Funds is helpful in interpreting Section 4.09. ERISA's definition of "employer," as suggested by the Funds, simply begs the question that is before the Court: an "employer" is a "person who is obligated to contribute to a plan either as a direct employer, or in the interest of an employer of the plan's participants." See Rheem Mfg. Co. v. Central States Pension Fund, 63 F.3d 703, 706-07 (8th Cir. 1995). The National Labor Relations Act's definition, see 29 U.S.C. § 152(3), albeit more favorable on its face to the Funds' position, cannot be applied without rendering the remainder of Section 4.09 meaningless, as discussed above. It is not the Court's role to inject broad definitions into an otherwise plain-on-its-face provision when doing so would result in at best a strained and unnatural interpretation of that provision.

The Funds cite to cases where a general contractor was held liable, either directly or as a guarantor, for contributions accrued by the employees of its subcontractors. However, in each of those cases, the contract in question created that obligation on its face. See, e.g., Walsh v. Schlecht, 429 U.S. 401, 406 (1977)

-9-

(contract stated that general contractor "shall be liable" for payment into fringe benefit funds). Unlike the contracts in those cases, however, the PLA creates neither a direct nor a guarantee obligation in Hunt or Daktronics to pay the contributions on behalf of Renaissance's employees.

Finally, the Funds argue that, given the amount of control that the PLA affords Hunt over each individual working on the project, the employees of Renaissance should also be considered employees of Hunt. The Funds point to several provisions that allegedly give Hunt the authority to reassign or discipline workers. However, none of the provisions that the Funds cite identify <u>who</u> can exercise such authority, only that workers can be reassigned or disciplined in certain circumstances. The Court finds nothing in the PLA that suggests that Renaissance employees should also be considered employees of Hunt such to hold Hunt directly liable for the contributions owing to the Funds.[5]

In sum, nothing in the plain language of the PLA creates either a direct or indirect obligation in Hunt or Daktronics to pay the contributions accrued for work performed by employees of Renaissance.

B.

The Funds alternatively urge the Court to remand the case so that they may introduce extrinsic evidence to show that the phrase "the employees" in Section 4.09 is latently ambiguous. "A latent ambiguity arises when the contract on its face appears clear and unambiguous, but collateral facts exist that make the contract's meaning uncertain." <u>Connect Comms. Corp. v. SW Bell Tele., L.P.</u>, 467 F.3d 703,

---

[5]This finding does not invalidate the PLA as a pre-hire agreement under 29 U.S.C. § 158. A general contractor need not complete the work itself in order to be entitled to the protection provided by § 8(f), so long as its role in the construction is more than negligible. <u>See</u> <u>Union Asphalts &Roadoils, Inc. v. MO-KAN Teamsters Pension Fund</u>, 857 F.2d 1230, 1234 (8th Cir. 1988).

709-10 (8th Cir. 2006) (quotation omitted). The Funds identified with little explanation a number of documents that they suggest alter the plain meaning of "employees." Simply suggesting that some evidence might produce a latent ambiguity, however, is insufficient to survive a motion to dismiss. Rather, the disputed provision must first be "reasonably susceptible of the meaning proposed . . . ." See John Morrell & Co. v. Local Union 304A of United Food & Comm. Workers, AFL-CIO, 913 F.2d 544, 552 (8th Cir. 1990). As noted above, the Funds' suggested interpretation of the first sentence of Section 4.09 would render the last sentence of that section meaningless. Because Section 4.09 is not reasonably susceptible of the meaning proposed by the Funds, there is no need for the Court to remand the case to the District Court.

## C.

The Funds also argue that they should be given an opportunity to present evidence showing that Renaissance's employees were also employees of Hunt. The Funds failed to allege a joint-employer relationship in the Amended Complaint. In fact, in Counts XII and XIII of the Amended Complaint, the Funds refer to the employees in question only as "Employees of Defendant Renaissance Electric" or "Defendant Renaissance Electric's employees." The Funds are not entitled to present evidence on an issue that they did not allege in their Amended Complaint.

## III.

The Court affirms the District Court's dismissal of Counts XII and XIII for failure to state a claim upon which relief can be granted.

_____