**CORPORATE COMMISSION OF the MILLE LACS BAND OF OJIBWE INDIANS, Plaintiff,**

v.

**MONEY CENTERS OF AMERICA, INC., et al., Defendants.**

**Civil No. 12–1015 (RHK/LIB).**

United States District Court, D. Minnesota.

Dec. 2, 2013.

Jane E. Maschka, Michael M. Krauss, Faegre Baker Daniels LLP, Minneapolis, MN, for Plaintiff.

Luke P. McLoughlin, Erin M. Carter, James L. Beausoleil, Jr., Duane Morris LLP, Philadelphia, PA, Robert B. Patterson, Jr., Patterson Law Office, PA, Minnetonka, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

### INTRODUCTION

This case arises from a contract between Plaintiff Corporate Commission of the Mille Lacs Band of Ojibwe ("the Commission") and Defendants Money Centers of America, Inc. and MCA of Wisconsin, Inc. (collectively, "MCA") for MCA to provide cash-access services in the Commission's casinos ("the Agreement"). Under the Agreement, the Commission would advance MCA cash daily for use in its transactions with casino patrons, MCA would deduct its fees from the amount advanced, and then MCA would wire the balance back to the Commission according to the parties' agreed-upon schedule.

After the parties encountered several problems during the course of the Agreement, most notably MCA's failure to repay the Commission's advances on time, the Commission terminated the Agreement. When MCA refused to repay $5.6 million of outstanding advances, the Commission commenced the instant action, asserting breach of contract and other claims. The Commission later amended its Complaint to join MCA's executives, Mark and Christopher Wolfington (collectively "the Wolfingtons"), as Defendants, seeking to pierce the corporate veil and hold them liable for MCA's breach and asserting several other claims. In September of this year, the Court granted summary judgment against MCA on the Commission's breach-of-contract claim; the Commission now moves the Court to enter judgment on that claim

under Rule 54(b) and dismiss its remaining claims against MCA. For the reasons set forth below, its Motion will be granted.

### BACKGROUND

On April 4, 2012, the Commission filed suit against MCA to recover $5.6 million of outstanding cash advances. In its First Amended Complaint, it alleged six counts against MCA: breach of contract; unjust enrichment; conversion; constructive trust; replevin; and fraud. MCA responded by asserting nine counterclaims: six for breach of contract; unjust enrichment; promissory estoppel; and conversion. During the course of discovery, the Commission learned that MCA had been balance-sheet insolvent since at least 2007 and no longer had the $5.6 million advanced by the Commission. The Commission also began to suspect that the Wolfingtons "siphoned funds from MCA to pay close family members and their own personal expenses" during the course of MCA's relationship with the Commission and throughout this litigation. (Pl.'s Mem. at 2.) The Commission amended its Complaint for a second time, joining the Wolfingtons as Defendants and asserting nine claims against them: breach of contract/piercing the corporate veil; unjust enrichment; conversion; constructive trust; fraud; two claims of fraudulent transfer; preference; and breach of fiduciary duty (against Christopher Wolfington only).

MCA and the Wolfingtons moved to dismiss the Second Amended Complaint. At the same time, the Commission and MCA cross-moved for partial summary judgment on the Commission's breach-of-contract and unjust-enrichment claims against MCA, and the Commission also moved for partial summary judgment on MCA's counterclaims. On September 30, 2013, 2013 WL 5487417, the Court issued an

Order: (1) granting the Commission summary judgment on its breach-of-contract claim against MCA in the amount of $5,623,690.83 plus prejudgment interest; (2) granting the Commission summary judgment on all of MCA's counterclaims; and (3) granting MCA summary judgment on the Commission's unjust-enrichment claim. The Court also issued an Order denying MCA's Motion to Dismiss and granting in part and denying in part the Wolfingtons' Motions to Dismiss, leaving five claims pending against MCA and eight claims pending against the Wolfingtons, including for breach of contract/piercing the corporate veil.

Concerned about MCA's insolvency and its ability to collect a $5.6 million judgment, the Commission now moves to dismiss its remaining claims against MCA and for the immediate entry of judgment on its already adjudicated breach-of-contract claim against MCA. The Motion has been fully briefed and is now ripe for disposition.

## ANALYSIS

### I. Entry of Final Judgment

■ Federal courts have a longstanding policy against piecemeal appeals. *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). As a result, courts generally do not enter or certify judgment in a case until all claims against all parties have been resolved. However, under Federal Rule of Civil Procedure 54(b), "[a] court *may* direct entry of a final judgment as to one or more, but fewer than all, claims or parties," if the court "expressly determines that there is no just reason for delay." Fed.R.Civ.P. 54(b) (emphasis added). Thus, before entering judgment under Rule 54(b), a court must determine (1) that

it is dealing with a "final judgment," and (2) that there is "no just reason for delay." *Curtiss–Wright*, 446 U.S. at 7–8, 100 S.Ct. 1460 (citation omitted).

### A. Finality

■ A final judgment is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* at 7, 100 S.Ct. 1460 (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)). Final judgment may be entered "as to one or more, but fewer than all, claims or parties." Fed.R.Civ.P. 54(b). Here, the Commission requests that the Court enter judgment as to one party—MCA. It moves to dismiss its five remaining claims against MCA and have judgment entered against MCA, while its claims against the Wolfingtons remain pending.

■ Under Federal Rule of Civil Procedure 41(a), the Court may dismiss claims at the plaintiff's request "on terms that the court considers proper." Fed.R.Civ.P. 41(a)(2). The Commission seeks to dismiss its remaining claims against MCA *without* prejudice, with such dismissal to become *with* prejudice once the time for the judgment's appeal expires, or if appealed, once judgment is affirmed. In other words, the Commission wants the Court to dismiss its claims for now in order to obtain a final judgment, but allow it to resurrect those claims later if it does not win on appeal. The Commission cannot have it both ways—it "may not evade the final judgment principle and end-run Rule 54(b) by taking a tongue-in-cheek dismissal of its remaining claims." *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1245 (8th Cir.1994). The Court is satisfied that dismissing those claims *with* prejudice, however, will result

in a final judgment.[1] *See id.; Madsen v. Audrain Health Care, Inc.,* 297 F.3d 694, 697–98 (8th Cir.2002).

## B. No Just Reason for Delay

 In determining whether there is no just reason for delay, "a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. 1460. The Eighth Circuit has set forth a list of factors to consider:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the present or absence of a claim or counterclaim which could result in a setoff against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Hayden v. McDonald,* 719 F.2d 266, 269 (8th Cir.1983). While the Court considers each of these in its analysis, no single factor is dispositive. "It is left to the sound judicial discretion of the district court" to weigh the factors and decide, based on the totality of the circumstances, whether to enter judgment. *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. 1460. Here, the Court determines that the equities outweigh the potential inefficiency of interlocutory appeal and warrant the entry of judgment.

*i. Judicial Administrative Interests*

 The primary concern when entering interlocutory judgment is that the appellate court will be required to "decide the same issue or familiarize itself with the same set of facts more than once." *Nw. Airlines v. Astraea Aviation Servs.,* 930 F.Supp. 1317, 1326 (D.Minn.1996) (Kyle, J.); *see Curtiss–Wright,* 446 U.S. at 8–9, 100 S.Ct. 1460. For this reason, the Court must consider the relationship between the adjudicated claim against MCA for breach of contract and the unadjudicated claims against the Wolfingtons. In this case, all but one of the unadjudicated claims are severable from the adjudicated claim and involve separate factual and legal issues. Only the breach-of-contract claim against the Wolfingtons overlaps with the adjudicated claim, because the Commission must prove MCA's breach of contract in order to pierce the corporate veil and hold the Wolfingtons liable for it. As the Wolfingtons' liability is predicated on MCA's, these claims are inextricably related. Nonetheless, the Commission's claim against the Wolfingtons requires consideration of substantial factual and legal issues that its claim against MCA does not. MCA's breach is just *one* element of its claim against the Wolfingtons; in order to pierce the corporate veil, the Commission must also prove MCA was merely the Wolfingtons' alter ego and that they used MCA to commit fraud or injustice. *NetJets Aviation Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 176 (2d Cir.2008). As demonstrated by the reams of documents the Commission has submitted in support of its Motion for Summary Judgment on its piercing claim against Christopher Wolfington, proof of those elements involves considerable evidence concerning

---

**1.** The Commission moves, in the alternative, for dismissal with prejudice. (Pl.'s Mem. at 6

n. 1.)

the Wolfingtons' conduct and MCA's corporate records and bookkeeping, none of which is relevant to MCA's breach of contract. *See, e.g., Robbins v. B & B Lines, Inc.,* No. 84–c–4652, 1986 WL 5014, at *2 (N.D.Ill. Apr. 24, 1986) (although liability for an unadjudicated alter-ego claim may be dependent on a finding in an adjudicated breach-of-contract claim, the alter-ego analysis requires independent findings irrelevant to the adjudicated claim and thus entry of Rule 54(b) judgment was appropriate). This overlap between the claims, although modest, nonetheless militates against entering judgment.

The remaining administrative factors are straightforward in the instant case and both weigh in favor of entering judgment: Future developments would not moot the need for review, and there are no remaining counterclaims that might offset the judgment. *See Hayden,* 719 F.2d at 269.

If judicial economy were the only interest at stake, Rule 54(b) judgment might be inappropriate, but the Commission has a strong interest in collecting its judgment, which justifies the entry of judgment nonetheless.

#### ii. *Equitable Considerations*

▮ The principal force behind the Commission's Motion for the Entry of Judgment is its dwindling prospect of collecting the $5.6 million judgment. "[I]f [a defendant's] financial position is such that a delay in entry of judgment would impair [the plaintiff's] ability to collect on the judgment, that [weighs] in favor of certification." *Curtiss–Wright,* 446 U.S. at 12, 100 S.Ct. 1460. MCA acknowledges it is insolvent and on the verge of filing for bankruptcy. (MCA Mem. at 4; Doc. No. 251 ¶ 3; C. Wolfington Dep. at 181–82; M. Wolfington Dep. 247–48.) Its precarious financial state creates a considerable danger that the Commission will not be able to

collect its judgment—a danger which has only grown throughout this litigation. *See Hayden,* 719 F.2d at 268 (Rule 54(b) judgment should only be entered if it would alleviate "some danger of hardship or injustice through delay."). Indeed, MCA acknowledges that the Commission's prospect for recovery is "remote," but argues the entry of judgment is futile, as it would not "make the prospect of a recovery from MCA any less remote." (MCA's Mem. at 4–5.) The Court arrives at the opposite conclusion: MCA's insolvency makes the immediate entry of judgment essential to mitigating the Commission's already diminished odds. *See, e.g., Pereira v. Cogan,* 52 Fed.Appx. 536, 539–40 (2d Cir. 2002) (upholding Rule 54(b) certification of judgment against insolvent defendant); *Darr v. Muratore,* 8 F.3d 854, 858 (1st Cir.1993) (upholding Rule 54(b) certification of judgment based on solvent defendant's precarious ability to satisfy judgment).

### CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, the Court expressly determines there is no just reason for delaying the entry of judgment; accordingly, **IT IS ORDERED** the Commission's Motion for Entry of Final Judgment against Money Centers of America, Inc. and MCA of Wisconsin, Inc. and to Dismiss Remaining Claims Against Those Two Defendants (Doc. No. 245) is **GRANTED,** Counts III–VI of the Commission's Second Amended Complaint (Doc. No. 129) are **DISMISSED WITH PREJUDICE** against MCA, and the Clerk of Court is **DIRECTED TO ENTER JUDGMENT** as to Count I of the Second Amended Complaint (Doc. No. 129) against MCA. **IT IS FURTHER ORDERED** that Plaintiff Corporate Commission of the Mille Lacs Band of Ojibwe Indians recover

of Defendants Money Centers of America, Inc. and MCA of Wisconsin, Inc. the sum of $5,623,690.83 plus prejudgment interest at a rate of 10% per year.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**